2008 UT App 133

**STATE of Utah, Plaintiff and Appellee,**

v.

**Kimberly Shea HAVATONE, Defendant and Appellant.**

No. 20070135–CA.

Court of Appeals of Utah.

April 10, 2008.

John Pace and Patrick S. Tan, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Jeanne B. Inouye, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and McHUGH.

## OPINION

DAVIS, Judge:

¶ 1 Defendant Kimberly Shea Havatone appeals her conviction for possession of a controlled substance. She argues that the trial court abused its discretion by allowing testimony, questioning, and closing argument statements referencing her prior forgery conviction. We agree and reverse.

## BACKGROUND

¶ 2 Havatone was arrested after Officer Malley, who was working "the dope motel" in search of drug-related activities, found her vehicle and realized that she was wanted on a felony forgery warrant. Officer Malley arrested Havatone in her motel room and supervised her while she changed from a nightshirt into street clothes. He then handcuffed Havatone with her arms behind her back, performed a pat-down search of her that revealed nothing, and placed her in his police car. The ride to the jail was uneventful, and Officer Malley noticed nothing suspicious on the part of Havatone, including any furtive movements. Upon arriving at the jail, Officer Malley helped Havatone out of the car and then lifted the back seat cushion where he discovered a plastic twist containing methamphetamine lying on the floorboard under the middle portion of the seat

cushion. It was Officer Malley's custom to check under the seat each time he arrested and transported a person, and he had checked it that night prior to arresting Havatone but had found nothing. When confronted with the methamphetamine, Havatone told Officer Malley, "I did a forgery but I don't do drugs, you can test me."

¶ 3 Havatone was charged with one count of possession of a controlled substance. Prior to trial, the parties agreed that Officer Malley could testify that Havatone was arrested pursuant to a warrant, but that forgery would not be mentioned. The morning of trial, however, the State wanted to bring in Havatone's statement about having committed a forgery. The defense objected, arguing that the possession charge was completely unrelated to the forgery charge. The defense also stated that Havatone had not intended to testify because doing so might open the door to the forgery charge information. The trial court allowed the information that the arrest warrant was for forgery, reasoning that it was relevant for showing context and that its probative value outweighed any prejudice. The trial court also allowed Officer Malley to testify regarding Havatone's statement, reasoning that the statement was an admission.

¶ 4 Havatone testified at trial. She told about her prior guilty plea to forgery and admitted that she had told Officer Malley that she had committed a forgery. On cross-examination, the prosecutor questioned Havatone regarding the forgery charge, not only eliciting that she had pleaded guilty to such a charge but also exploring the elements of forgery, emphasizing that forgery involves a person's dishonesty. In closing argument rebuttal, the prosecutor referenced the forgery charge, arguing that Havatone "ha[d] a conviction for lying, for dishonesty, for forgery, passing bad checks" and that Officer Malley was the more credible witness because of Havatone's previous lying.

¶ 5 Havatone now appeals the resulting guilty jury verdict, alleging that the trial court improperly allowed testimony, questioning, and closing argument statements regarding the forgery charge and passing bad checks. She argues that these errors—whether considered individually or together—prevented her from receiving a fair trial.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 6 Havatone argues that the trial court erred by allowing Officer Malley to testify that he arrested Havatone on a forgery warrant and that when he confronted her about the drugs she said that she had previously committed a forgery. Havatone also alleges that the prosecutor's cross-examination of Havatone was improper. Trial court rulings on the admissibility of evidence "generally entail a good deal of discretion," *State v. Pena*, 869 P.2d 932, 938 (Utah 1994), and we review those rulings for an abuse of that discretion.

■ ¶ 7 Havatone further argues prosecutorial misconduct based on the prosecutor's closing argument statements that referenced her forgery conviction and passing bad checks. Because Havatone did not object to these statements at trial, we review this claim for plain error. *See State v. Dunn*, 850 P.2d 1201, 1224 (Utah 1993).

## ANALYSIS

■ ¶ 8 Havatone argues that several errors were committed below and that these errors resulted in prejudice to her. "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence . . . that a fair trial was had." *State v. Kohl*, 2000 UT 35, ¶ 25, 999 P.2d 7 (omission in original) (internal quotation marks omitted). While any one of these errors, considered individually, may or may not have been prejudicial to Havatone, when taking them together, we cannot say that a fair trial was had, especially considering that the State's case against Havatone was not particularly strong. Thus, we reverse under the cumulative error doctrine.

¶ 9 First, the trial court abused its discretion by allowing Officer Malley to testify that the arrest warrant was for a forgery charge. The admission of evidence of other crimes is governed by rule 404(b) of the Utah Rules of Evidence. *See* Utah R. Evid. 404(b). "[I]n deciding whether evidence of other crimes is

admissible under rule 404(b), the trial court must determine (1) whether such evidence is being offered for a proper, noncharacter purpose under 404(b), (2) whether such evidence meets the requirements of rule 402, and (3) whether this evidence meets the requirements of rule 403." *State v. Decorso*, 1999 UT 57, ¶ 20, 993 P.2d 837.

¶ 10 The State asserts that the evidence was admissible for the noncharacter purpose of showing context. Although this is not one of the specific noncharacter purposes listed in rule 404(b), *see* Utah R. Evid. 404(b), we agree that evidence of other crimes may be admissible to show context. *See State v. Allen*, 2005 UT 11, ¶ 17, 108 P.3d 730 (stating that the list of noncharacter purposes in rule 404(b) "is not exhaustive"); *State v. Morgan*, 813 P.2d 1207, 1210 n. 4 (Utah Ct.App.1991) ("[T]he prosecutor is entitled to paint a factual picture of the context in which the events in question transpired."). Such evidence, however, must also meet the relevancy requirement of rule 402. *See* Utah R. Evid. 402; *see also Decorso*, 1999 UT 57, ¶ 22, 993 P.2d 837 ("[U]nless the other crimes evidence tends to prove some fact that is material to the crime charged—other than the defendant's propensity to commit crime—it is irrelevant and should be excluded by the court pursuant to rule 402.").

¶ 11 The State argues that "Officer Malley's discovery of [Havatone's] vehicle at the motel, his discovery that [she] was wanted on an outstanding forgery warrant, and his execution of that warrant" were all relevant to explain why Havatone was being transported in Officer Malley's car just prior to the discovery of the drugs. This is a persuasive argument regarding the propriety of admitting the evidence that there was a warrant out for Havatone's arrest. But we do not see—and the State does not explain—how the specific fact that the arrest warrant stemmed from a forgery charge is relevant, i.e., that it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Utah R. Evid. 401. This specific detail regarding the reason for the warrant does not tend to prove any fact material to the drug charge, and such irrelevant evidence cannot be admitted simply for the sake of context and painting a picture for the jury. *Cf. United States v. Lamberty*, 778 F.2d 59, 61 (1st Cir.1985) ("We do not find that the evidence introduced to show the government's motive in setting the trap is in any way relevant to proving the elements of the counts charged. While the jurors may have been curious as to why the inspectors began their operation, enlightenment on this matter had no probative value."). We therefore determine that the trial court abused its discretion by allowing Officer Malley to testify that the warrant for Havatone's arrest was a forgery warrant.[1]

¶ 12 Second, the trial court also erred by allowing Officer Malley to testify that when confronted about the drugs, Havatone responded, "I did a forgery but I don't do drugs, you can test me." Following the same logic as above, we arrive at the same conclusion, that the evidence of Havatone admitting that she had committed a forgery was not relevant to any fact material to the drug charge and that the trial court abused its discretion by allowing the presentation of such evidence.[2]

---

1. Because this evidence is irrelevant, we need not advance to the rule 403 analysis. *See* Utah R. Evid. 403 (providing that *relevant* evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"). Such analysis would be superfluous because irrelevant evidence of a prior crime creates some danger of unfair prejudice, which would substantially outweigh the nonexistent probative value of such evidence. *See Larsen v. Johnson*, 958 P.2d 953, 957–58 (Utah Ct.App. 1998) (holding that evidence "was irrelevant and thus had no probative value").

2. It appears that the trial court may have allowed testimony regarding Havatone's statement by reasoning that it was an admission and a prior inconsistent statement, and then may have allowed testimony that the warrant was for forgery in order to provide context for Havatone's statement. *See State v. Dominguez*, 2003 UT App 158, ¶ 21, 72 P.3d 127 (allowing testimony that was "necessary as context for admissible evidence"). But even when a statement qualifies as an admission or a prior inconsistent statement, this simply prevents the statement from being considered hearsay. *See* Utah R. Evid. 801(d). Such a statement is not free of the overarching rule that "[e]vidence which is not relevant is not

¶ 13 Third, the trial court abused its discretion by allowing certain questions during the prosecution's cross-examination of Havatone. Rule 609 of the Utah Rules of Evidence allowed the prosecutor to ask Havatone about the forgery charge for impeachment purposes.[3] *See* Utah R. Evid. 609(a). Such introduction of evidence "should be limited to the nature of the crime, the date of the conviction and the punishment." *State v. Tucker*, 800 P.2d 819, 822 (Utah Ct.App. 1990). However, when the accused "attempts to explain away the effect of the conviction or to minimize his guilt," the prosecution is allowed to probe beyond these limits and elicit relevant details of the crime. *Id.* at 823 (internal quotation marks omitted).

¶ 14 Here, the prosecutor's questioning of Havatone included the following:

Q: ... [S]o forgery is something that somebody is guilty of, with the purpose to defraud anyone or with knowledge that he is facilitating a fraud to be perpetrated by anyone, he or she alters a writing of another without his authority or other such altered writing or makes, completes, executes, authenticates, issues, transfers, publishes or utters any writing so that the writing or the making, completion, execution, authentication, issuance, transference, publication or utterance purports to the act of another, whether the person is existent or non-existent, what purports to have been executed at a time or place or in a numbered sequence other than what's in

the (inaudible) case or to be a copy of an original when no such original existed. That's what a forgery is, right?

[ (Objection was made and overruled.) ]

Q: So those are the elements of the crime forgery as far as you know, is that correct?

A: Yes.

Q: So this is a situation that involves someone's honesty, doesn't it?

A: Yes.

The State argues that such questioning was permissible as setting forth the nature of the crime and clarifying that forgery involves dishonesty. But "[i]nquiry into the 'nature' of prior convictions is limited due to the prejudicial effect it may have on the jury." *State v. Colwell*, 2000 UT 8, ¶ 33, 994 P.2d 177. The elaboration here went well beyond the limited questions allowed to impeach Havatone, especially where Havatone never attempted to explain away her actions or to minimize her guilt respecting the forgery.[4]

¶ 15 The State also argues that Havatone opened the door to this questioning by admitting that she had pleaded guilty to the charge, thus implying that she was honest. But, as we have said, Havatone did not testify in such a way as to explain away her actions that led to the forgery charge or to minimize her guilt in relation to the charge. In fact, she was accepting full responsibility.

admissible," *id.* R. 402. Thus, because testimony of Havatone's statement was not relevant and was therefore not admissible, testimony of the nature of the warrant was not admissible to provide context for Havatone's statement.

3. Once Havatone decided to take the stand, the information about her prior forgery was necessarily allowed, *see* Utah R. Evid. 609(a), and would render those errors regarding Officer Malley's testimony harmless. However, it appears from the record that had the trial court correctly excluded Office Malley's testimony regarding the forgery information, Havatone would have never testified. Right before the commencement of trial, Havatone's counsel stated:

[I]t's still up in the air whether Ms. Havatone is going to take the stand and testify. I believe it's going to come down to how much of Officer Malley's testimony will be in regards to the forgery issue and based on what I was able to

find out, if in fact there is going to be testimony to the extent or to what extent that's going to come in, I may have no other alternative than to put Ms. Havatone on the stand to try to explain further to the jury and we'll have to play that by ear.

4. The State also argues that this issue was not preserved by defense counsel's objection. But the objection that these questions were irrelevant and beyond the scope of the direct was sufficient to raise the issue before the court that the forgery issue was not relevant to the drug charge and that Havatone had not opened the door to any questioning more in-depth than that typically allowed in relation to previous crimes. *See Nielsen v. Pioneer Valley Hosp.*, 830 P.2d 270, 272 (Utah 1992) (determining that certain objections made "under the stress and pressure of a trial" were sufficient to preserve issues even where the objections "were not textbook examples of specificity").

Thus, she did not open the door to an inquiry into any details of the charge.

¶ 16 Finally, we address the alleged prosecutorial misconduct. The relevant part of the prosecutor's closing argument is as follows:

> I want to talk to you about the conflicts of the evidence today because you heard from one person from the prosecution's side and one person from the defense's side and the defense in his closing argument made a pretty big deal about the fact that [Havatone] had been convicted of forgery, wanted to bring that to your attention and make sure that you're clear on the fact that there's no forgery charge today. Why do you think that is, ladies and gentlemen? Think about that for a second. Why was he so insistent about that? I'll tell you why, he wants to divert your attention away from the fact that [Havatone] has a conviction for lying, for dishonesty, for forgery, passing bad checks. You heard the definition of what a forgery is. I'm not here to tell you that [Havatone] is a bad person. I'm not trying to tell you that. What I am here to tell you is that you have to weigh the statements of two separate people. When you go back there to the jury room you should believe what Officer Malley told you. Officer Malley is the more credible witness in this case. Did [Havatone] say the drugs didn't belong to her? Yeah. She said it on January 27th, did [not] take responsibility for them then and didn't take responsibility for them today. The defense would lead you to believe that because she admitted to the forgery, what she was saying about the drugs was also true. That to me is very strange, ladies and gentlemen, because she admits to lying about something, having lied in the past and then wants you to believe that she's not lying on that day. Don't be fooled by this. Don't be fooled.

The State concedes that the reference to passing bad checks was improper because nowhere in the record is there any evidence

that supports it. And, more importantly, it was plain error for the court to allow the prosecutor at closing to encourage the jury to consider the details of Havatone's prior conviction as character evidence. *See* Utah R. Evid. 404(b).[5]

## CONCLUSION

¶ 17 We reverse Havatone's conviction based on the cumulative error doctrine. Several errors below, although possibly not individually prejudicial, when combined and considered with the weakness of the evidence against Havatone, undermine our confidence that Havatone received a fair trial.

¶ 18 WE CONCUR: JUDITH M. BILLINGS and CAROLYN B. McHUGH, Judges.

---

5. Havatone alleges that the prosecutor's comments were also inappropriate because they accused defense counsel of misleading the jury and they voiced the prosecutor's personal opinion.

Because we determine that the comments were inappropriate for other reasons and that the above analyzed errors were cumulatively prejudicial, we need not reach these arguments.