2008 UT App 357

**STATE of Utah, Plaintiff and Appellee,**

v.

**Lee Wayne NORTHCUTT, Defendant and Appellant.**

**No. 20060946–CA.**

Court of Appeals of Utah.

Oct. 9, 2008.

---

Dee W. Smith, Ogden, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Karen A. Klucznik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before THORNE, Associate P.J., McHUGH, and ORME, JJ.

## OPINION

McHUGH, Judge:

¶1 Lee Wayne Northcutt appeals from his convictions for aggravated kidnapping, *see* Utah Code Ann. § 76–5–302 (Supp.2008), and aggravated assault, *see id.* § 76–5–103 (2003).[1] We affirm.

---

1. Because Northcutt's arguments do not concern the statutory language, we cite to the current code as a convenience to the reader.

2. "When reviewing a jury verdict, we recite the facts in the light most favorable to that verdict." *State v. Carreno,* 2006 UT 59, ¶3, 144 P.3d 1152.

## BACKGROUND [2]

¶2 Northcutt's convictions arise from a May 2005 altercation (the 2005 incident) between him and his then wife, P.H., (Wife)[3] during which Northcutt restrained Wife on a couch, covered her face with a pillow, and told her that he was going to kill her. As she felt herself losing consciousness, Wife pushed the pillow off, at which point Northcutt covered her nose and mouth with his hand and again told her he was going to kill her. Wife was able to "peel a finger" off her face and began pleading for her life. Wife convinced Northcutt to let her breathe and broke a window in the hope of escaping, cutting herself in the process. While Northcutt was preoccupied, Wife ran out of the home and stopped a passing automobile, whose driver called the police. When the driver intervened, Northcutt threatened to "just shoot" both the driver and Wife.

¶3 As a result of the 2005 incident, Northcutt was charged with aggravated kidnapping and attempted murder. Northcutt's defense at his jury trial was that the altercation was essentially a misunderstanding and that his restraint of Wife was in response to her own violent outburst. He also denied that he threatened her life or had an intent to kill her and claimed that he unintentionally covered her mouth and nose, preventing her from breathing, during the incident. Over Northcutt's objection, the district court allowed the State to cross-examine Northcutt about a similar incident in August 2003 (the 2003 incident) involving his former wife, G.L., (Former Wife) and allowed the State to present Former Wife's testimony about the 2003 incident. The jury convicted Northcutt of aggravated kidnapping and of aggravated assault as a lesser-included offense to the attempted murder charge. Northcutt appeals.

## ISSUE AND STANDARD OF REVIEW

¶4 Northcutt's appeal challenges the district court's ruling allowing the State to

---

3. Although P.H. and Northcutt later divorced, we refer to P.H. as Wife in this decision to distinguish her from G.L., a woman who was married to and divorced from Northcutt before he met and married P.H. We refer to G.L. in this decision as Former Wife.

present evidence about the 2003 incident to the jury. "We review a trial court's decision to admit evidence of other crimes, wrongs, or bad acts for an abuse of discretion." *State v. Fedorowicz*, 2002 UT 67, ¶ 24, 52 P.3d 1194; *see also State v. Decorso*, 1999 UT 57, ¶ 18, 993 P.2d 837.

## ANALYSIS

¶ 5 Northcutt argues that evidence pertaining to the 2003 incident[4] was inadmissible under rule 404(b) of the Utah Rules of Evidence, which states:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

Utah R. Evid. 404(b). " '[I]n deciding whether evidence of other crimes is admissible under rule 404(b), the trial court must determine (1) whether such evidence is being offered for a proper, noncharacter purpose under 404(b), (2) whether such evidence meets the requirements of rule 402, and (3) whether this evidence meets the requirements of rule 403.' " *State v. Havatone*, 2008 UT App 133, ¶ 9, 183 P.3d 257 (alteration in original) (quoting *Decorso*, 1999 UT 57, ¶ 20, 993 P.2d 837).

### I. Rule 404(b)—Non-Character Purpose

■■ ¶ 6 Northcutt correctly argues that evidence of prior bad acts introduced simply to show that Northcutt has a predisposition to abuse his spouses is precisely the type of evidence precluded by rule 404(b). "It is of course fundamental in our law that a person can be convicted only for acts committed, and not because of general character or a proclivity to commit bad acts." *State v. Reed*, 2000 UT 68, ¶ 23, 8 P.3d 1025. For such evidence to be admissible, it must have " 'a special relevance to a controverted issue and [be]

introduced for a purpose other than to show the defendant's predisposition to criminality.' " *Id.* ¶ 24 (quoting *State v. Featherson*, 781 P.2d 424, 426 (Utah 1989)). Under the circumstances of this case, testimony about the 2003 incident had a special relevance and was offered for a proper, non-character purpose.

¶ 7 Northcutt was charged with attempted murder, which required the State to prove that Northcutt had the specific intent to cause the death of Wife,[5] *see* Utah Code Ann. §§ 76–4–101, 76–5–203 (Supp.2008). Wife testified that Northcutt tried to kill her by holding her down on the couch and trying to suffocate her. She also testified that Northcutt threatened to get a gun and shoot her and the passing driver who stopped to help. Northcutt defended against these charges by denying, in opening statement and by his own testimony, that he made any death threats or tried to suffocate Wife. Instead, he testified that he did not want to disturb the neighbors so he "put [his] hand down on her face to quiet her down from the screaming." According to Northcutt, he was unaware that he had covered both her mouth and her nose. He testified that as soon as he realized he was preventing her from breathing, he removed his hand. Thus, Northcutt argued the suffocation was a mistake or accident, and he did not have the requisite intent to kill Wife. Furthermore, Northcutt disputed Wife's version of the altercation, painting Wife as the aggressor and describing his own conduct as reactive. Northcutt indicated that he simply "set [Wife] down on the sofa" so that they could finish their argument and that he was just trying to hold Wife still because she was "completely ... out of her head, out of her mind."

¶ 8 The trial court concluded that the testimony of Former Wife was offered to impeach Northcutt and to counter Northcutt's claims of accident, mistake, and lack of intent. Each of these uses has been held to be a proper non-character purpose permissible

---

4.  On appeal, Northcutt makes no objection to the evidence illustrating that he had previously abused Wife; he challenges only the admission of the testimony of Former Wife.

5.  Because we find that the evidence had a non-character purpose relating to the attempted murder charge, we need not address the requirement as it relates to the other charges against Northcutt.

under rule 404(b). *See State v. Houskeeper,* 2002 UT 118, ¶ 28, 62 P.3d 444 (holding that prior bad acts evidence may be admitted to impeach defendant's testimony); *State v. Widdison,* 2001 UT 60, ¶ 43, 28 P.3d 1278 ("[E]vidence regarding prior instances of abuse [of children other than the victim] is 'clearly admissible in Utah to show identity, intent or mental state, and lack of accident or mistake.'" (quoting *State v. Teuscher,* 883 P.2d 922, 927 (Utah Ct.App.1994))); *State v. Nelson–Waggoner,* 2000 UT 59, ¶ 22, 6 P.3d 1120 (allowing evidence of prior rapes to show intent, plan or scheme, and absence of mistake). *But see Featherson,* 781 P.2d at 428–30 (rejecting evidence of nonconsensual sex with other women where identity not contested and pattern evidence irrelevant); *State v. Cox,* 787 P.2d 4, 6 (Utah Ct.App. 1990) (rejecting evidence of nonconsensual sex with other women where identity not in issue and prior incidents too remote in time). Consequently, we hold that the State had a proper non-character purpose for introducing the testimony of Former Wife.

## II. Rule 402—Relevance

¶ 9 The recognition of a proper purpose does not end our inquiry. The evidence must also be relevant. *See Havatone,* 2008 UT App 133, ¶ 9, 183 P.3d 257. "Relevant evidence is defined as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Allen,* 2005 UT 11, ¶ 22, 108 P.3d 730 (quoting Utah R. Evid. 401). Former Wife testified that she sought a protective order against Northcutt after he grabbed her arms and pushed her down on the bed, refused to let her leave, and made comments about his ready access to a gun, which comments she interpreted as death threats. Because Northcutt testified that Wife had overreacted to his behavior, that he had no intent to harm her, and that he suffocated her only accidentally, the testimony of Former Wife about similar, intentional conduct was relevant evidence under rule 402 because it had a tendency to make the absence of mistake and thus Northcutt's intent to kill more probable. *See* Utah R. Evid. 402.

## III. Rule 403—Unfair Prejudice

¶ 10 The final step in determining whether evidence is admissible under rule 404(b) is an examination of whether the evidence is more probative than prejudicial under rule 403. *See State v. Havatone,* 2008 UT App 133, ¶ 9, 183 P.3d 257.

> When conducting a rule 403 review of prior misconduct evidence, trial courts should consider several factors, including "the strength of the evidence as to the commission of the other crime [or misconduct], the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence will rouse the jury to overmastering hostility."

*Widdison,* 2001 UT 60, ¶ 50, 28 P.3d 1278 (alteration in original) (quoting *State v. Shickles,* 760 P.2d 291, 295–96 (Utah 1988)). The trial court in this case considered these "*Shickles* factors" and issued a written decision allowing Former Wife's testimony into evidence.

¶ 11 A trial court's decision to admit evidence challenged under rule 404(b) is reviewed for abuse of discretion. *See Allen,* 2005 UT 11, ¶ 15, 108 P.3d 730. In making that assessment, the appellate court must "review the record to determine whether the admission of other bad acts evidence was 'scrupulously examined' by the trial judge 'in the proper exercise of that discretion.'" *Nelson–Waggoner,* 2000 UT 59, ¶ 16, 6 P.3d 1120 (quoting *State v. Decorso,* 1999 UT 57, ¶ 18, 993 P.2d 837). Although some of the *Shickles* factors weigh against admission of the evidence, others weigh in favor of admission, and the trial court carefully considered those factors and the arguments for and against admission.

¶ 12 Most of the *Shickles* factors support the admission of Former Wife's testimony. Even though Northcutt could not remember some of the details and disputed others, he did acknowledge the incident involving Former Wife. Therefore, the evidence as to the commission of the other misconduct was reasonably strong. There were also similarities

between the two incidents in that Northcutt physically restrained both women, refused to let them leave, and is alleged to have made death threats against each involving a firearm.

¶ 13 Northcutt correctly notes that the time lapse between the current crime and the prior bad act is a factor in both the relevancy and prejudice analyses. *See State v. Featherson*, 781 P.2d 424, 430 (Utah 1989) (stating that prior bad acts "must be reasonably close in time to the crime charged," with the inquiry being "whether the other acts have clearly probative value with respect to the intent of the accused at the time of the offense charged" (emphasis, internal quotation marks, and citations omitted)). Northcutt argues that the twenty-month interval between the two incidents renders the earlier incident "too remote in time" to have any relevant or probative effect and that its introduction could only serve to "rouse[ ] the jury to hostility" against him. Under the circumstances of this case, however, we see no error in the district court's decision to allow the testimony.

¶ 14 Northcutt's assault on Former Wife occurred in August 2003, and they divorced in March 2004. Northcutt and Wife met in April 2004, and they were married in June 2004. Without objection, Wife was permitted to testify to incidents of abuse inflicted by Northcutt that began shortly after their marriage and continued through the date of the crime for which Northcutt was convicted. We are not convinced that the trial court exceeded its discretion in concluding that the 2003 incident was not too remote. *See generally State v. Widdison*, 2001 UT 60, ¶ 51, 28 P.3d 1278 (holding bad acts that occurred over four years prior to crime were not too remote because of their particular probative value).

¶ 15 We likewise agree that the testimony of Former Wife was not likely to "rouse the jury to overmastering hostility." *Id.* ¶ 50 (quoting *State v. Shickles*, 760 P.2d 291, 295–96 (Utah 1988)). The testimony about the

2005 incident concerning Wife was considerably more disturbing than Former Wife's description of the 2003 incident. Furthermore, Wife testified to a number of other incidents of Northcutt's abusive conduct. Consequently, there is nothing about Former Wife's testimony that presents anything so egregious that it would have created overmastering hostility toward Northcutt.

¶ 16 However, there are two *Shickles* factors that we believe weigh against admission of the evidence: (1) the need for the evidence and (2) the efficacy of alternative proof. It appears from the record that the State had ample proof without Former Wife's testimony. The driver testified that Wife ran up to his car, wearing a bloody shirt, exhibiting signs of extreme distress, and declared that Northcutt "was trying to kill her." Wife described to the jury a history of abuse and misconduct by Northcutt that began within months of their marriage and culminated, approximately a year later, in the assault for which Northcutt was convicted. A neighbor testified that she heard Northcutt and Wife arguing the morning of the assault, that she heard the glass breaking, and that she saw Wife approach the driver's car with Northcutt in pursuit. The neighbor also testified that when she let Wife into her apartment to wait for the paramedics, she observed that Wife was shaken and looked beaten up, and that Wife said Northcutt had tried to kill Wife. The State also offered testimony from the arresting police officers about the condition of the scene, Wife's injuries,[6] and Northcutt's statements made during investigative interviews. In light of this evidence, we conclude that the testimony of Former Wife may well not have been needed and that the alternate proof would likely be effective, without more, to dispel the claims of accident, mistake, or lack of intent.

¶ 17 Nevertheless, the trial court is in the best position to apply the *Shickles* factors and to determine whether to admit evidence of prior bad acts. *Widdison*, 2001 UT 60,

---

**6.** The State supplemented the testimony about Wife's physical condition with photographs, tak-

en at the hospital, of her injuries.

¶ 42, 28 P.3d 1278. Because the district court " 'scrupulously' examine[d] the evidence before it [was] admitted," *id.* (citing *State v. Decorso,* 1999 UT 57, ¶ 18, 993 P.2d 837), we hold that it did not exceed its discretion in allowing Former Wife to testify.

¶ 18 Affirmed.

¶ 19 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge, and GREGORY K. ORME, Judge.