2013 UT App 192

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
THOMAS WAYNE DENOS,
Defendant and Appellant.

Opinion
No. 20110959-CA
Filed August 1, 2013

Third District, West Jordan Department
The Honorable Charlene Barlow
No. 111400098

Harold W. Stone III, Attorney for Appellant
John E. Swallow and Ryan D. Tenney, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Opinion, in which JUDGE
MICHELE M. CHRISTIANSEN concurred. JUDGE GREGORY K. ORME
concurred in part and dissented in part, with opinion.

DAVIS, Judge:

¶1 Thomas Wayne Denos appeals his conviction of one count of rape, a first degree felony, *see* Utah Code Ann. § 76-5-402(1), (3) (LexisNexis 2012); one count of forcible sodomy, a first degree felony, *see id.* § 76-5-403(2), (4); and one count of forcible sexual abuse, a second degree felony, *see id.* § 76-5-404(1), (2)(a). We affirm.

BACKGROUND

¶2 On or about December 11, 2010, Denos and E.M. attended a party hosted by E.M.'s friend (Friend) and Friend's boyfriend

(Boyfriend) at their home. Denos and E.M. were friends and rode to the party together. Although they had briefly dated previously, they were not dating at the time of the party. When they arrived at the party, most of the other guests were drinking heavily.

¶3 At the party, E.M. drank heavily and smoked marijuana. She soon became noticeably intoxicated. At some point in the evening, after having consumed copious quantities of alcohol, E.M. made her way to Friend and Boyfriend's bedroom. Eventually Boyfriend joined her and the two had sex. After Boyfriend left, E.M. either fell asleep or passed out.

¶4 Defense counsel asserted that sometime after Boyfriend left, another man (Guest) entered the bedroom and attempted to have sex with E.M. E.M. called out for help, and Denos entered the room to remove Guest. Denos then stayed in the room with E.M. and lay down next to her. According to Denos, after laying down by E.M., the two began to cuddle and discuss their relationship. After talking for a few minutes, they began to touch each other and take off their clothes, and they eventually had consensual sex.

¶5 According to E.M., the "first thing" she remembered after falling asleep was waking to find Denos on top of her, kissing her neck and touching her breasts and vagina. E.M. passed out again and then awoke to find Denos performing oral sex on her. She pulled his hair and repeatedly told him "no," but he continued. E.M. asked Denos to "promise [he would] not have sex with [her] no matter what," and he said, "Don't worry. I promise." (Internal quotation marks omitted.) E.M. then passed out a third time and woke to find Denos "on top of [her] having sex with [her]." "[B]efore [E.M.] could . . . say anything he pulled out and he ejaculated on [her] stomach." E.M. "didn't know what to do" and "felt like [she] just needed to go to sleep" and not "worry about anything." Denos stayed with her, and they slept in the same bed until morning.

¶6      E.M. testified that when she awoke in the morning she felt "guilty" and worried that what happened with Denos was "all [her] fault because . . . [she had] put [herself] in a bad situation" by drinking and doing "bad things." Nevertheless, she decided to tell Friend and Boyfriend what had happened to her. Defense counsel proffered at trial that E.M. and Boyfriend also confessed their drunken sexual encounter to Friend at that time. Defense counsel's version of events is reflected in the presentence investigation report prepared after trial, but it is not contained elsewhere in the record. Friend testified that E.M. was crying when she approached Friend and Boyfriend about the incident with Denos.

¶7      Based on rule 412 of the Utah Rules of Evidence, and over defense counsel's objection, the trial court refused to permit defense counsel to cross-examine E.M. about her encounters with Boyfriend and Guest or her confession to Friend about the incident with Boyfriend. *See generally* Utah R. Evid. 412 (prohibiting, with limited exceptions, "evidence offered to prove that a victim engaged in other sexual behavior; or . . . to prove a victim's sexual predisposition" in "criminal proceeding[s] involving alleged sexual misconduct"). Denos was permitted to testify only that E.M. had invited him into the room but not that he went in to remove Guest.

¶8      Also at trial, the court permitted the State to introduce rule 404(b) testimony from three women, K.L., B.A., and B.E., who claimed to have been victimized by Denos in the past. *See generally id.* R. 404(b) (permitting trial courts to admit evidence of prior bad acts for proper, noncharacter purposes). K.L. testified that in April 2007, she and Denos attended a sleepover at a friend's house and ended up sleeping on a large bed together. Despite having agreed with Denos that each of them would stay on separate halves of the bed, K.L. woke in the night to find Denos rubbing her genitals over her underwear. She pushed him away and went back to sleep but then woke to him doing the same thing again. K.L. elbowed Denos, and he rolled over and left her alone after that. K.L. did not report the incident to police.

¶9   B.A. testified that in April 2007, Denos and several other people attended a sleepover at her house. She testified that she fell asleep while watching a movie and then awoke to find that Denos had placed her hand on his penis and was rubbing her vagina "[s]kin to skin." She told Denos to stop, and he responded, "'Please.'" She repeated, "No. Stop," and got up to go to another room. B.A. did not report the incident to police.

¶10   B.E. testified that she and Denos both attended a party in July 2010 and that she had been drinking heavily. The party ended late at night, and B.E., her brother, and Denos went to her brother's house to sleep. B.E.'s brother went to sleep in his room, and B.E. and Denos went into a back room together with the intention of sleeping. B.E. dozed off in the house and then awoke to find herself in Denos's truck with him on top of her having sex with her. B.E. did not remember how she got to the truck but believed that she walked out on her own and was not forced. When she realized that Denos was having sex with her, she told him to stop. He did not stop immediately but "stopped after a minute," and he and B.E. went back inside the house. They then lay back down together in the house and stayed there. B.E. reported the incident seven months later, and Denos was tried and acquitted two weeks before the trial in this case.

¶11   Defense counsel moved to exclude the rule 404(b) evidence, but the trial court denied the motion and permitted the women to testify. The jury convicted Denos of the charges against him, and he now appeals.

ISSUES AND STANDARDS OF REVIEW

¶12   Denos first asserts that the trial court erred by prohibiting his counsel from eliciting testimony regarding E.M.'s encounters with Boyfriend and Guest, arguing that curtailing cross-examination in this way was a violation of his Sixth Amendment confrontation right, *see* U.S. Const. amend. VI. "We review the trial

court's underlying evidentiary determinations for abuse of discretion," but the alleged "[d]enial of the right to confront and cross-examine witnesses presents a question of law which is reviewed for correctness." *State v. Clark*, 2009 UT App 252, ¶ 10, 219 P.3d 631 (citation and internal quotation marks omitted).

¶13    Denos next contests the trial court's determination that the rule 404(b) evidence was admissible under the circumstances of this case. We review this determination for an abuse of discretion. *State v. Nelson-Waggoner*, 2000 UT 59, ¶ 16, 6 P.3d 1120.

ANALYSIS

I. Rule 412 Evidence

¶14    Denos asserts that the trial court violated his Sixth Amendment right to confront witnesses when it excluded evidence related to E.M.'s encounters with Boyfriend and Guest under rule 412 of the Utah Rules of Evidence. Rule 412 provides, with limited exceptions, that "evidence offered to prove that a victim engaged in other sexual behavior" and "evidence offered to prove a victim's sexual predisposition" is "not admissible in a criminal proceeding involving alleged sexual misconduct." Utah R. Evid. 412(a). One exception to this rule permits the trial court to admit such evidence, where otherwise admissible under the rules, if its "exclusion would violate the defendant's constitutional rights." *Id.* R. 412(b).

> [A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witnesses.

*Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) (omission in original); *accord State v. Clark*, 2009 UT App 252, ¶ 16, 219 P.3d 631.

A.    The Evidence Relating to Guest Was Not Subject to Exclusion Under Rule 412, but Its Exclusion Constituted Harmless Error.

¶15    First, we are not convinced that evidence relating to E.M.'s encounter with Guest fell within the ambit of rule 412, which excludes only evidence of a victim's "sexual behavior" and "sexual predisposition." *See* Utah R. Evid. 412(a). "Past sexual behavior connotes all activities that involve actual physical conduct (i.e. sexual intercourse and sexual contact) or that imply sexual intercourse or sexual contact," such as the birth of an illegitimate child, evidence of venereal disease, or use of contraceptives, as well as "mental activities, such as fantasies or dreams." *Id.* R. 412 advisory committee note. Evidence relating to a victim's sexual predisposition includes "evidence of the alleged victim's dress, speech, or life-style." *Id.*

¶16    Evidence that Denos entered the room where E.M. was sleeping in order to remove Guest, who was attempting to assault E.M., does not relate to E.M.'s sexual behavior or predisposition. If anything, this evidence makes E.M. appear less sexually promiscuous because it portrays her rejecting a man who was attempting to have sex with her. As Denos observes, this evidence "certainly might reflect on [Guest]'s sexual proclivities" but does not reflect on E.M.'s. Accordingly, it is not subject to exclusion under rule 412.[1] *Cf. State v. Martin*, 2002 UT 34, ¶ 42, 44 P.3d 805 (rejecting the trial court's conclusion that evidence that the victim had previously accepted rides with strangers reflected her sexual proclivities and was inadmissible under rule 412).

---

1. Because evidence relating to E.M.'s encounter with Guest did not fall within the ambit of rule 412, Denos was also not required to file a motion in order to introduce it. *Cf. infra* ¶ 18.

¶17    Nevertheless, the trial court's exclusion of this evidence was harmless beyond a reasonable doubt because the evidence was of little, if any, probative value. *See generally State v. Vigil*, 2013 UT App 167, ¶ 11 ("'[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.'" (quoting *Van Arsdall*, 475 U.S. at 681)). Denos was not prevented from asking E.M. whether he entered and remained in the room at E.M.'s invitation or from testifying to that himself. Indeed, Denos testified at trial that after most of the other guests had left, E.M. "came out and asked [him] if [he would] stay in the room with her" and that he then "went in the room and laid down with her." Denos asserts that without evidence that he went into the room to get rid of Guest, it was "possible that the jury received the . . . impression that Denos invited himself [into] the room with E.M. in a predatory fashion" and that Denos, having seen E.M. enter the room in her inebriated state, "saw his opportunity to take advantage of an extremely intoxicated girl." We disagree. This impression, if it existed, could easily be overcome by testimony suggesting that Denos was invited into the room, regardless of whether testimony relating to the reason for the invitation were permitted.[2] Accordingly, although we agree with Denos that the evidence relating to Guest did not fall within the purview of rule 412, its exclusion was harmless beyond a reasonable doubt. *See id.*

---

2. When asked about the incident at trial, E.M. did not corroborate Denos's story that he was invited into the room, but testified, "The first thing I remember is him on top of me." There is also some indication that the incident with Guest occurred even prior to E.M.'s encounter with Boyfriend and had nothing to do with Denos. In short, it is not at all clear whether the incident with Guest was even relevant to show how Denos ended up in the room with E.M., *see generally* Utah R. Evid. 401; *id.* R. 402, or that cross-examining E.M. about this incident would have helped Denos's defense.

B.     The Evidence Relating to Boyfriend Was Properly Excluded Under Rule 412 Because Denos Failed to File a Pretrial Motion for Its Admission and the State Did Not Open the Door to the Evidence at Trial.

¶18     The evidence relating to Boyfriend clearly related to E.M.'s sexual behavior and was therefore subject to the dictates of rule 412. A party who seeks to offer rule 412 evidence must "file a motion that specifically describes the evidence and states the purpose for which it is to be offered . . . at least 14 days before trial unless the court, for good cause, sets a different time." Utah R. Evid. 412(c)(1). The motion is to be served on all parties, and notice given to the alleged victim. *Id.* R. 412(c)(1)(C), (c)(2). The trial court then conducts an in camera review of the evidence to evaluate its admissibility. *Id.* R. 412(c)(3). Denos filed no such motion, and no hearing was ever held.[3] Therefore, Denos waived his right to confront the witnesses about the encounter with Boyfriend.[4]

---

3. Denos's failure to file a motion and request a hearing was not only contrary to rule 412 but also resulted in an incomplete record on appeal. There is little if any evidence in the record to show what the witnesses would have testified to had Denos been permitted to cross-examine them as he wished. Rather, the record contains only the assertions of Denos's counsel about what he believed the witnesses would testify to.

4. Denos asserts that we cannot affirm the trial court's ruling on this basis because the State did not preserve its argument that admission of the evidence was precluded by Denos's failure to file a rule 412 motion. However, "the primary purpose of the preservation rule" is to ensure that "[c]laimed *errors* [are] raised before trial courts in such a manner that the trial courts have a meaningful opportunity to correct them." *Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 22, 163 P.3d 615 (emphasis added); *see also Badger v. Brooklyn Canal Co.*, 966 P.2d 844, 847 (Utah 1998) ("The purpose of [the preservation] requirement[] is to put[] the judge on notice (continued...)

¶19    Denos alternatively argues that even if his failure to file a rule 412 motion precluded him from introducing the evidence relating to Boyfriend, the State opened the door to that evidence when it questioned E.M. and Friend about E.M.'s demeanor the morning after her encounters with Boyfriend and Denos. E.M. testified that she felt "guilty" and "stupid" because she had "been reckless and . . . done bad things" and that she believed what had happened to her the night before had been "[her] fault." Friend testified that E.M. began crying when she encountered Friend the next morning. Denos asserts that "fundamental fairness" required the trial court to permit him to cross-examine the witnesses about the encounter with Boyfriend so the jury could be given an alternative explanation for E.M.'s emotions, i.e., her guilt over having slept with her friend's boyfriend.

¶20    In part due to the incomplete record, which fails to provide any insight into what Friend and E.M. would have testified to had

---

4. (...continued)

of the asserted *error* and allow[] the opportunity for correction at that time in the course of the proceeding." (third and fourth alterations in original) (emphasis added) (citation and internal quotation marks omitted)). While the preservation requirement generally precludes us from *reversing* the trial court's decision for errors claimed for the first time on appeal, it is well settled that we may affirm a judgment on any ground apparent on the record, regardless of whether that ground was urged below. *Limb v. Federated Milk Producers Ass'n*, 461 P.2d 290, 293 n.2 (Utah 1969); *see also Bailey v. Bayles*, 2002 UT 58, ¶ 13 & n.3, 52 P.3d 1158. *See generally id.* ¶ 10 ("It is well settled that an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory . . . was not raised in the lower court, and was not considered or passed on by the lower court." (citation and internal quotation marks omitted)).

they been cross-examined as Denos requested, *see supra* note 3, we agree with the trial court that there is nothing to indicate that E.M. felt guilty or was crying "mostly because of [having had] sex with her best friend's boyfriend." And while "[t]here may have been other things that factored into [her demeanor], . . . it was [not] sufficient to allow [the court] to go against [rule] 412," particularly where "[t]he issue [was] not whether the intercourse happened" but whether E.M. consented to the intercourse. *Cf. State v. Tarrats*, 2005 UT 50, ¶ 21, 122 P.3d 581 ("Even where [rule 412] evidence bears some marginal relevance, it has an unusual propensity to unfairly prejudice, inflame, or mislead the jury and is likely to distort the jury's deliberative process and should therefore be excluded." (citations and internal quotation marks omitted)). The fact that E.M. felt guilty and cried about the decisions she had made the night before did not have a significant impact on the consent issue one way or the other because it could just as easily have been explained by E.M. feeling regret about having consented to sex with Denos in her inebriated state as by trauma over having been raped. In other words, Denos did not need to introduce evidence regarding the incident with Boyfriend in order to provide the jury with an alternative explanation for E.M.'s emotions, and the testimony about E.M.'s demeanor did not inappropriately mislead the jury in such a way as to require that the evidence about Boyfriend be admitted out of concern for "fundamental fairness."[5]

## II. Rule 404(b) Evidence

¶21    Denos next contends that the trial court erred in permitting the rule 404(b) witnesses to testify. Evidence sought to be admitted

---

5. The dissent asserts that permitting cross-examination on this issue would not have necessarily implicated rule 412, suggesting that E.M. may have felt guilty and cried for any number of reasons, not specifically for having slept with Boyfriend. *See infra* ¶ 32. However, it is clear from the discussion between defense counsel and the trial court that defense counsel intended specifically to ask E.M. about the incident with Boyfriend.

under rule 404(b) must withstand a three-part inquiry. *State v. Nelson-Waggoner*, 2000 UT 59, ¶¶ 18–20, 6 P.3d 1120. First, it must be "offered for a proper, noncharacter purpose," *id.* ¶ 18, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Utah R. Evid. 404(b)(2). Second, the evidence must be admissible under rule 402, that is, it must be relevant to the noncharacter purpose identified. *See Nelson-Waggoner*, 2000 UT 59, ¶ 19; *see also* Utah R. Evid. 402. *See generally id.* R. 401 (defining relevant evidence as evidence having "any tendency to make a fact more or less probable than it would be without the evidence" where "the fact is of consequence in determining the action"). Finally, the evidence must be admissible under rule 403, that is, its probative value may not be "'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Nelson-Waggoner*, 2000 UT 59, ¶ 20 (quoting Utah R. Evid. 403).

¶22 In this case, the State sought to introduce rule 404(b) testimony for the proper noncharacter purpose of proving lack of consent. *See generally id.* ¶ 24 (explaining that rule 404(b) evidence could be "admitted for the noncharacter purpose of proving the element of lack of consent in certain rape trials"). This evidence was relevant to lack of consent because it suggested that Denos had victimized other women "in a strikingly similar manner." *See id.* As our supreme court recently explained,

> When one person claims rape, the unusual and abnormal element of lying by the complaining witness may be present. But when two (or more) persons tell similar stories, the chances are reduced that both are lying or that one is telling the truth and the other is coincidentally telling a similar false story.

*State v. Verde*, 2012 UT 60, ¶ 48, 296 P.3d 673 (citation and internal quotation marks omitted). Denos asserts that the events recounted

by the rule 404(b) witnesses were not similar to the events that occurred in this case because the type of sexual activity varied with each of the three witnesses: K.L. alleged that Denos touched her genitals over her underwear, B.A. alleged that he touched her genitals under her underwear, and B.E. alleged rape but no fondling. E.M. alleged that Denos fondled her breasts in addition to her genitals and that Denos performed oral sex on her—actions none of the other witnesses alleged. While this may be true, other similarities make this evidence relevant: all of the alleged victims were acquaintances of Denos; all of them were assaulted immediately following a party, late at night after the victim and other party-goers had either fallen asleep or passed out; and most striking, Denos assaulted all of the women while they were either asleep or unconscious, apparently in order to avoid seeking their consent. *Cf. State v. Marchet* (*Marchet III*), 2012 UT App 267, ¶¶ 9–10, 287 P.3d 490 (rejecting the argument that "'a lesser sexual advance . . . not amounting to aggravated sexual assault, rape or sodomy'" and variations in the defendant's specific sexual behavior precluded the admissibility of a rule 404(b) witness's testimony where other circumstances of the assault were consistent with the defendant's modus operandi (omission in original)). The low probability that all of these women would independently, but falsely, have reported such similar experiences makes the evidence relevant for the noncharacter purpose of proving lack of consent.

¶23 We next turn to the question of whether the danger of unfair prejudice substantially outweighed the probative value of the rule 404(b) evidence. In analyzing this question, we employ what have come to be known as the *Shickles* factors, which include

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*State v. Shickles*, 760 P.2d 291, 295–96 (Utah 1988). We address each factor in turn.

¶24    First, the evidence was generally strong because the witnesses "testified in person at trial and were available for cross-examination," *see State v. Marchet* (*Marchet I*), 2009 UT App 262, ¶ 45, 219 P.3d 75. However, the strength of B.E.'s testimony was undermined by the fact that Denos had been acquitted of raping her only two weeks before the trial in this case, though any prejudice was mitigated by the fact that the jury was informed of the acquittal. *Cf. Nelson-Waggoner*, 2000 UT 59, ¶ 31 (indicating that a defendant's acquittal on an alleged rape to which a rule 404(b) witness testified made her testimony "suspect"); *State v. Hildreth*, 2010 UT App 209, ¶ 44, 238 P.3d 444 (explaining that acquittal on charges relating to the testimony of a rule 404(b) witness "undercut[s] the credibility of the [witness's] testimony"). Thus, while this factor weighs in favor of admitting K.L.'s and B.A.'s testimony, it may weigh against admitting B.E.'s testimony.

¶25    Second, as discussed above, the events were strikingly similar. In particular, they demonstrate that Denos had a habit of assaulting women while they were unconscious or asleep. The likelihood that four different women would independently and falsely assert this particular modus operandi is low.

¶26    Third, at least as to B.E., the interval of time between the two crimes was small. The assault on E.M. took place less than five months after the assault on B.E., and even Denos concedes that this "would not be considered particularly lengthy." However, the incidents with K.L. and B.A. took place more than three-and-a-half years before Denos's assault of E.M. and more than three years before his alleged assault of B.E., which leads this factor to weigh against admission as to those two witnesses' testimonies. *Cf. Hildreth*, 2010 UT App 209, ¶ 44 & n.12 (holding that a three-year interval was "undoubtedly" lengthy). *But cf. Marchet I*, 2009 UT App 262, ¶ 45 (holding that a nearly two-and-a-half-year interval was "sufficiently proximate to warrant . . . admission").

¶27    Fourth, the need for the evidence was great; without it, "the jury would be left to resolve a contest of credibility between" Denos and E.M. *See Marchet I*, 2009 UT App 262, ¶ 45 (internal quotation marks omitted). And fifth, there was no alternative means of proving lack of consent that would be similarly effective. *See id.*

¶28    Finally, it is unlikely that the jury would have been roused to overmastering hostility by the rule 404(b) evidence. K.L.'s and B.A.'s testimonies revealed less disturbing behavior than that alleged in the case at hand, and B.E.'s testimony revealed more or less equally disturbing behavior. *See generally State v. Reed*, 2000 UT 68, ¶ 31, 8 P.3d 1025 ("[E]vidence of multiple acts of similar or identical abuse is unlikely to prejudice a jury."); *State v. Northcutt*, 2008 UT App 357, ¶ 15, 195 P.3d 499 (explaining that where the incident at issue is "more disturbing" than the ones described by the rule 404(b) evidence, that evidence is "not likely to rouse the jury to overmastering hostility" (citation and internal quotation marks omitted)).

¶29    Thus, at least five of the six *Shickles* factors weigh in favor of admitting each rule 404(b) witness's testimony. Because this testimony complies with the requirements of rules 402, 403, and 404 of the Utah Rules of Evidence, we cannot say that the trial court abused its discretion in admitting it.


CONCLUSION

¶30    Although the incident with Guest was not presumptively inadmissible under rule 412, its exclusion was harmless beyond a reasonable doubt. Furthermore, the trial court did not err by excluding evidence relating to the incident with Boyfriend because Denos failed to file a motion to admit the evidence and the State did not open the door to the evidence at trial. Finally, we agree with the State that the trial court did not abuse its discretion in

admitting the rule 404(b) evidence. Accordingly, we affirm Denos's convictions.

---

ORME, Judge (concurring in part and dissenting in part):

¶31    I concur in the lead opinion except for its conclusion that Denos's failure to file a timely rule 412 motion precluded him from cross-examining E.M., who was only seventeen at the time of the incident, about why she felt "'guilty' and 'stupid' because she had 'been reckless and done bad things'" and from cross-examining Friend about the circumstances of E.M.'s crying "when she encountered Friend the next morning." These were topics introduced by the State's witnesses and Denos had every right to examine E.M. and Friend about their testimony.

¶32    There is nothing in this testimony that would *necessarily* implicate rule 412 or the policy underlying it. For all we know, E.M. would explain that she felt guilty and stupid for drinking too much, that she was reckless for using illegal drugs, and that she had done bad things because she stole money from her friends' purses during the party. For all we know—and the lead opinion points out that there is little or nothing in the record bearing on what the testimony would have been had Denos been permitted to pursue his intended cross-examination—Friend would have explained that E.M. was upset because she did not have permission to stay the night and was going to be in big trouble when she got home.

¶33    I do agree that if the testimony were along these or similar lines, Denos's failure to comply with rule 412 would have precluded him from directly asking about prior sexual conduct on E.M.'s part. But if E.M.'s or Friend's answers included disclosures about prior sexual conduct by E.M., the responsibility would not lie with Denos and rule 412 would not apply. If the scenario played out that way, it would be fair to regard the State—or at least these

witnesses—as having opened the door by introducing the subjects of guilt, stupidity, recklessness, "bad things," and crying.

¶34   It was categorically unfair to permit the witnesses to trot these characterizations out yet preclude Denos from subjecting them to cross-examination, thereby leaving the jury to speculate about what explained the behaviors vaguely touched upon by E.M. and Friend. Because Denos's right to cross-examine this testimony was preempted completely, and not just to the extent of his asking directly about E.M.'s prior sexual conduct, his confrontation rights were violated. For this reason, I would reverse his convictions and remand for a new trial.

————