2003 UT App 88

**STATE of Utah, Plaintiff and Appellee,**

v.

**Michael Allen NORTON, Defendant and Appellant.**

No. 20020109–CA.

Court of Appeals of Utah.

March 27, 2003.

Gary L. Bell, Salt Lake City, for Appellant.

Dean Saunders, Weber County Attorney's Office, Ogden, for Appellee.

Before JACKSON, P.J., GREENWOOD, and ORME, JJ.

## OPINION

GREENWOOD, Judge:

¶1 Michael Norton (Defendant) appeals his conviction for two counts of violating the Bail Bond Recovery Act, Utah Code Ann. § 53–11–107 (2002); one count of Assault, in violation of Utah Code Ann. § 76–5–102 (1999); and two counts of Unlawful Detention, in violation of Utah Code Ann. § 76–5–304 (1999). Defendant contends: (1) the trial court erred in rejecting his mistake of law defense, (2) the Bail Bond Recovery Act was applied as an unconstitutional strict liability offense, and (3) the trial court's refusal to hear requested testimony violated his due process right to a fair trial. We affirm.

## BACKGROUND

¶2 On March 10, 2000, Defendant, as an agent of "A+24 Hour Bail Bonds," posted a $50,000 bond for Deloy Lindley (Lindley), resulting in Lindley's release from jail. Lindley signed a written contract pledging his truck, a stock trailer, and a snowmobile as collateral for the bond. Lindley agreed to pay Defendant $5,000 within two weeks. If Lindley did not or could not pay, Defendant was to sell whatever collateral necessary to satisfy the debt.

¶3 On or about March 20, Lindley called Defendant and told him to sell the truck, because he did not have the $5,000. Defendant became concerned about the value of Lindley's collateral.

¶4 Defendant maintains that he then researched, on the Internet, the law about revoking a bond and also contacted the Cache County Attorney's Office. Defendant read Utah Code Ann. § 77–20–8.5 (1999), entitled "Sureties—Surrender of defendant—Arrest of defendant." This section referenced "Title 53, Chapter 10, Bail Bond Recovery." *Id.* § 77–20–8.5(3). However, the Bail Bond Recovery Act (the Act) had been renumbered as Chapter 11, because another Chapter 10 was enacted at the same legislative session. *See id.* compiler's notes. Based on this change, Defendant alleges that he did not find or read the Act. Defendant also claims he spoke to a Deputy County Attorney about revoking Lindley's bond.

¶ 5 Allegedly believing he could legally revoke Lindley's bond,[1] on April 4, 2000, Defendant went to Lindley's residence, handcuffed him, and returned him to jail. Two days later, Lindley was released by the court.[2] The judge who released Lindley commented that the "bail bondsman doesn't have any right to haul you off to jail." Apparently, Defendant made no effort to discover why the court had released Lindley, and never asked the court to revoke Lindley's bond.

¶ 6 On April 16, Defendant and a co-worker returned to Lindley's residence, handcuffed him, and took custody of him after spraying him with pepper spray and "tackling" him when he attempted to flee. Lindley testified that he was punched, kicked, and hit with a rock. Lindley also testified that Defendant told him he was going to kill him. Law enforcement officers intervened and took Lindley to the hospital because of the effects of the pepper spray and complaints of being beaten by Defendant and his co-worker.

¶ 7 It is undisputed that Defendant was not licensed as a Bail Recovery Agent or Bail Enforcement Agent, as required under the Act. *See id.* § 53–11–107 (2002). The State filed charges against Defendant for the two incidents of returning Lindley to jail in violation of the Act because Defendant was not properly licensed, two counts of Unlawful Detention, and one count of Assault.

¶ 8 During the course of the proceedings, Defendant submitted a pretrial motion arguing he should be permitted to assert a mistake of law defense. *See id.* § 76–2–304 (1999). After an evidentiary hearing, the court denied Defendant's motion. A jury trial was held November 14–15, 2001. During the jury trial, Defendant and his co-worker testified about their efforts to research the legality of revoking Lindley's bond. At the close of testimony, Defendant's counsel asked to recall Defendant; the re-

quest was denied. Defendant was found guilty on all counts and this appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 First, Defendant asserts the trial court erred when it ruled that Defendant was not entitled to assert a mistake of law defense under Utah Code Ann. § 76–2–304(2)(b)(ii) (1999). A question of statutory interpretation is reviewed "for correctness, granting no deference to the trial court's ruling." *In re W.C.P.*, 1999 UT App 35, ¶ 5, 974 P.2d 302. After hearing testimony on this issue, the trial court found that Defendant did not rely on a written interpretation of the statute. "A trial court's findings of fact are reviewed under a clearly erroneous standard." *Mule–Hide Prods. Co. v. White*, 2002 UT App 1, ¶ 11, 40 P.3d 1155.

¶ 10 Second, Defendant argues the trial court erred in applying the Act as an unconstitutional strict liability offense. This issue is raised for the first time on appeal. An appellate court may address an issue raised for the first time on appeal if " 'plain error' " or " 'exceptional circumstances' " is established. *State v. Irwin*, 924 P.2d 5, 7 (Utah Ct.App.1996) (citations omitted). If neither applies, the court may decline to consider the issue. However, necessarily included in Defendant's argument is his claim that the jury was improperly instructed. Challenges to jury instructions are reviewed " 'under a "correctness" standard.' " *Cheves v. Williams*, 1999 UT 86, ¶ 20, 993 P.2d 191 (citation omitted).

¶ 11 Third, Defendant argues the trial court violated his due process right to a fair trial when it prohibited his further testimony. The admissibility of evidence is reviewed for "abuse of discretion or reasonability. '[E]ven where error is found, reversal is appropriate only in those cases where, after review of all the evidence presented at trial, it appears that "absent the error, there is a reasonable likelihood that a different result would have been reached." ' " *Mule–Hide*

---

1. At trial, Defendant testified that he believed he was making a legal citizen's arrest.

2. At some point after Lindley's release, Defendant called 911 requesting help from officers in

returning Lindley to jail. Two sheriff's deputies met him for this purpose, but Lindley was not home.

*Prods. Co.*, 2002 UT App 1 at ¶ 12, 40 P.3d 1155 (citations omitted).

## ANALYSIS

### I. Mistake of Law Defense

¶ 12 Defendant argues the trial court erred when it rejected his mistake of law defense. The State counters that, based on Utah Code Ann. § 76–2–304(2)(b)(ii) (1999), the trial court properly rejected the defense. At issue, therefore, is whether the trial court correctly interpreted section 76–2–304 when it concluded, "The ignorance of law defense requires that the official statement or interpretation of the law be in writing."

■ ¶ 13 Because Defendant did not rely on a written interpretation of the law, the trial court held that the necessary elements of a mistake of law defense had not been shown and the defense was inapplicable. Utah's ignorance or mistake of law statute states:

> (2) Ignorance or mistake concerning the existence or meaning of a penal law is no defense to a crime unless:
>
>   . . . .
>
> (b) His ignorance or mistake resulted from the actor's reasonable reliance upon:
>
>   . . . .
>
>> (ii) *A written interpretation* of the law contained in an opinion of a court of record or made by a public servant charged by law with responsibility for interpreting the law in question.

Utah Code Ann. § 76–2–304 (emphasis added). When interpreting a statute, the court's "primary goal . . . is to give effect to the legislative intent, as evidenced by the plain language, in light of the purpose the statute was meant to achieve. [The court] need look beyond the plain language only if [it] find[s] some ambiguity." *State v. Lusk*, 2001 UT 102, ¶ 19, 37 P.3d 1103 (quotations and citation omitted). The language of section 76–2–304 clearly and unambiguously requires a written interpretation, by either a court of record or a public servant, in order for mistake of law to be an available defense.

■ ¶ 14 The trial court heard testimony concerning Defendant's claim that mistake of law was an applicable defense. A Deputy Cache County Attorney testified about his conversation with a police officer, who had received a complaint from Defendant about Lindley's bond agreement. The Deputy Attorney testified, "To the best of my recollection, I didn't ever have a substantive conversation with [Defendant] individually about the issue of whether or not he could pick up Mr. Lindley." Accordingly, the court found that, while Defendant may have had a conversation about revoking bail with the Deputy Attorney, the conversation was casual and informal. The court also found the Deputy Attorney did not have all the relevant facts to make a formal interpretation of the law and did not reduce his statements to writing. The court held that section 76–2–304 requires a written interpretation of the law, and therefore the defense was not available to Defendant. We see no error in the court's conclusions.

¶ 15 Because Defendant did not rely on a written interpretation of the law, the trial court did not err when it held that the defense was inapplicable.

### II. Bail Bond Recovery Act as an Unconstitutional Strict Liability Offense

■ ¶ 16 Defendant argues for the first time on appeal that the trial court's pretrial ruling rejecting his mistake of law defense resulted in application of the Act as an unconstitutional strict liability offense.[3] "We do not address issues raised for the first time on appeal unless specific grounds for doing so are presented to this court." *Utah Med. Prod., Inc. v. Searcy*, 958 P.2d 228, 233–34 (Utah 1998). Defendant also fails to argue that the trial court committed plain error or that exceptional circumstances exist. *See State v. Irwin*, 924 P.2d 5, 7 (Utah Ct.App. 1996) (stating that an appellate court may address an issue raised for the first time on

---

**3.** Defendant states that this issue was preserved for appeal during the March 30, 2001 evidentiary hearing, and during the November 14–15, 2001 jury trial. However, this argument is not mentioned in either of these hearings.

appeal if " 'plain error,' " " 'exceptional circumstances,' " or, in some situations, ineffective assistance of counsel is established (citations omitted)).

¶ 17 However, Defendant seems to also claim that the jury was improperly instructed to apply a strict liability standard. He maintains that the State was permitted "to carry its burden by simply showing the prohibited conduct occurred"; that had the jury been properly instructed, the State would have been required to carry its burden of proof of Defendant's mens rea.

¶ 18 Defendant's argument that he did not intend to violate the Act, and that the jury was not properly instructed as to his intent, is based on the " 'basic proposition that a person cannot be found guilty of a criminal offense unless he [or she] harbors a requisite criminal state of mind or unless the prohibited act is based on strict liability.' " *State v. W.C.P.*, 1999 UT App 35, ¶ 6, 974 P.2d 302 (alteration in original) (quoting *State v. Elton*, 680 P.2d 727, 728 (Utah 1984)). Utah Code Ann. § 76–2–101 (1999) states:

No person is guilty of an offense unless his conduct is prohibited by law and:

(1) He acts intentionally, knowingly, recklessly, with criminal negligence, or with a mental state otherwise specified in the statute defining the offense, as the definition of the offense requires; or

(2) His acts constitute an offense involving strict liability.

Further, section 76–2–102 states that offenses "involve strict liability if the statute defining the offense clearly indicates a legislative purpose to impose criminal responsibility for commission of the conduct prohibited by the state without requiring proof of any culpable mental state." *Id.* § 76–2–102. In this case, there is no indication of legislative intent to impose strict liability for violation of the Act. Therefore, the culpable mental state required is "intent, knowledge, or recklessness." *Id.*

¶ 19 The trial court's jury instructions defined the mental states of intentionally and knowingly, and instructed the jury that it needed to find Defendant acted with one of these mental states. For instance, instruction number eight states:

Before you can convict the Defendant ... of the crime of Operating as a Bail Enforcement Agent or Bail Recovery Agent Without a License, you must find from the evidence beyond a reasonable doubt all of the following elements of the crime: One, that said Defendant ... (c) *intentionally or knowingly*, without authority of law, (d) acted or assumed to act or represented himself to be licensed ... when, in fact, he was not licensed.

(Emphasis added.) Instructions ten and eleven define knowing and intentional.

¶ 20 Defendant confuses the intent to violate the law with the intent or requisite mental state to do the prohibited act. Only the latter is required—not a specific intent to violate the law. Under the instructions given, the jury could find that Defendant intended "to engage in the conduct or cause the result," as the definition of "intentional" requires. Utah Code Ann. § 76–2–103(1) (1999).

¶ 21 The jury was not instructed that the State did not have to prove the appropriate mental state. Rather, the jury instructions defined the requisite mental states. Moreover, the State argued at trial that Defendant's conscious objective was to detain Lindley, spray him with pepper spray, tackle him, and return him to jail. The jury was correctly instructed. Defendant's argument that the Act was applied as an unconstitutional strict liability offense thus fails.

### III. Due Process Violation

¶ 22 Finally, Defendant argues that his due process right to a fair trial was violated when he was prohibited from testifying about his efforts to research the legality of revoking the bond. "While relevant evidence is generally admissible ... a trial court has broad discretion to determine whether proffered evidence is relevant, and we will find error in a relevancy ruling only if the trial court has abused its discretion." *State v. Kohl*, 2000 UT 35, ¶ 17, 999 P.2d 7 (alteration in original) (quotations and citation omitted). Because the trial court properly held that the mistake of law defense was not available to Defendant, testimony relevant only to that defense was properly ex-

cluded. *See State v. Harding,* 635 P.2d 33, 34 (Utah 1981) (stating where "there is no reasonable basis in the evidence to support the defense or its essential components, it is not error for the trial judge to ... refuse to instruct the jury as to the defense"); *see also* Utah R. Evid. 402 (stating "evidence which is not relevant is not admissible").

¶ 23 Moreover, despite the trial court's ruling that the mistake of law defense was not applicable, some testimony about Defendant's efforts to understand the law was received. Specifically, Defendant testified that he looked up the law regarding bond revocation on the Internet, and then called the Cache County Attorney's office. Defendant's co-worker testified that they read the law together, and that Defendant spoke with an attorney about the law. Counsel for Defendant discussed, in his opening and closing statements, the steps Defendant took to determine the legality of revoking the bond.

¶ 24 We conclude that the trial court did not abuse its discretion when it prevented Defendant's further testimony, which was cumulative and relevant only to his rejected mistake of law defense.

## CONCLUSION

¶ 25 The trial court did not err when it ruled Defendant was not entitled to raise a mistake of law defense, under Utah Code Ann. § 76–2–304(2)(b)(ii) (1999), because Defendant did not rely on a written interpretation of the law. Second, although we may decline to consider Defendant's argument that the Act as applied by the trial court was an unconstitutional strict liability offense because it was raised for the first time on appeal, we conclude there was no error because the trial court properly instructed the jury. Third, the trial court did not violate Defendant's due process rights when it prohibited Defendant from giving further testimony. We therefore affirm.

¶ 26 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and GREGORY K. ORME, Judge.