2010 UT App 396

STATE of Utah, Plaintiff and Appellee,

v.

Gordon R. KING, Defendant
and Appellant.

No. 20030069–CA.

Court of Appeals of Utah.

Dec. 30, 2010.

Herschel Bullen and Elizabeth Hunt, Salt Lake City, for Appellant.

Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee.

Before Judges McHUGH, ORME, and BILLINGS.[1]

## OPINION

ORME, Judge:

¶ 1 Gordon R. King appeals his conviction of attempted sexual abuse of a child, a third degree felony, see Utah Code Ann. § 76–5–404.1 (2008).[2] We have twice previously reversed King's conviction and remanded for a new trial. See State v. King (King I ), 2004 UT App 210, ¶ 27, 95 P.3d 282; State v. King (King III ), 2006 UT App 355, ¶ 16, 144 P.3d 222. As discussed more fully in the Background section, the Utah Supreme Court reversed both of our decisions and each time remanded the case for further consideration. See State v. King (King II ), 2006 UT 3, ¶ 26, 131 P.3d 202; State v. King (King IV ), 2008 UT 54, ¶ 47, 190 P.3d 1283. We once again reverse and remand for a new trial.

## BACKGROUND [3]

¶ 2 King was charged with aggravated sexual abuse of a child, a first degree felony, see Utah Code Ann. § 76–5–404.1(4)–(5) (2008), after his daughter's friend reported that

---

1. The Honorable Judith M. Billings, Senior Judge, sat by special assignment pursuant to Utah Code section 78A–3–103(2) (2008) and rule 11–201(6) of the Supreme Court Rules of Professional Practice.

2. As a convenience to the reader, and because the provisions in effect at the relevant times do not differ materially from the statutory provisions currently in effect, we cite to the most recent statutory codifications throughout this opinion.

3. The facts recited in this opinion are those pertinent to King's remaining issues on appeal. A more detailed recitation of the facts regarding King's now-rejected claims of trial court error and ineffective assistance of counsel with respect to the empaneling of two potentially prejudiced jurors can be found in King I, 2004 UT App 210, ¶¶ 2–8, 95 P.3d 282; King II, 2006 UT 3, ¶¶ 3–10, 131 P.3d 202; King III, 2006 UT App 355, ¶¶ 2–3, 144 P.3d 222; and King IV, 2008 UT 54, ¶¶ 4–13, 190 P.3d 1283.

King had inappropriately touched her during a sleepover at his home. King pleaded not guilty, and the case proceeded to a jury trial.

¶ 3 At trial, the alleged victim testified about a so-called "tickle fight" that took place immediately prior to the alleged inappropriate touching by King. In particular, the alleged victim stated that King stuck his hand down her pants and fondled her throughout the course of an episode during which King's daughter was rubbing a pillow on the alleged victim's head. A police detective testified that the alleged victim characterized the inappropriate touching as lasting for two to three minutes. King's daughter did not observe any inappropriate touching. During closing argument, the prosecutor referred to this touching as "something that occurred in maybe seconds," while King's daughter "was rubbing [a pillow] on her friend's head." The prosecutor then reiterated that "[w]e don't know the exact, few seconds when this occurred."

¶ 4 Additionally, the alleged victim admitted that after making the sexual abuse allegation against King, an acquaintance overheard a conversation that the alleged victim had with the alleged victim's younger sister in a church bathroom, in which the alleged victim said, "What if I lied?" The alleged victim did not clarify or explain the meaning of this statement at trial, nor was she asked to do so. The acquaintance, however, testified that she overheard the alleged victim say, "I am so glad that nobody found out that I lied." During closing argument, the prosecutor purported to explain the alleged victim's testimony regarding this bathroom encounter, suggesting that the alleged victim was merely worried about "people's perception of her" and was merely "expressing concern over what people would think if she had lied" and "if they thought she was a liar."

¶ 5 At the close of trial, the jury returned a guilty verdict on the lesser included offense of sexual abuse of a child, a second degree felony, see id. The trial court then reduced the conviction to third degree felony attempted sexual abuse of a child, pursuant to Utah Code section 76–3–402(1).[4]

¶ 6 Following trial, and after the record was transmitted to the court of appeals, defense counsel discovered that the record did not include, nor did either party's counsel possess, a copy of the instructions given to the jury.[5] On King's motion, the case was remanded to the trial court to reconstruct the jury instructions. After a hearing on the matter, the trial court produced a reconstructed set of twenty-six instructions, which it determined "with reasonable certainty to be the actual set of instructions given to the jury at defendant's trial."

¶ 7 King appealed his conviction, raising a total of seven issues. He argued that (1) although two jurors were passed for cause, the trial court erred in failing to remove them, sua sponte, or question them further about possible bias, and King's trial counsel provided ineffective assistance of counsel for failing to challenge the same jurors for cause or request that their potential prejudice be further examined; (2) remarks made by the prosecutor during closing argument constituted prosecutorial misconduct; (3) the trial court committed plain error in excluding the alleged victim's prior inconsistent statements; (4) the alleged victim's credibility was improperly bolstered by State witnesses; (5) the trial court plainly erred in admitting, and defense counsel was constitutionally ineffective in introducing, the preliminary hearing transcript; (6) the trial court failed to enter findings regarding alleged inaccuracies in the presentence investigation report; and (7) the trial court's reconstruction of the jury instructions was inadequate. King argued, among other things, that the cumulative ef-

---

4. The State correctly points out that while the trial court had the authority to reduce the level of offense by one degree, from a second degree to a third degree felony, it does not follow that the court should have changed the substantive offense of which King was convicted from sexual abuse to attempted sexual abuse.

5. As was often the custom, the court reporter did not transcribe the court's reading of the jury instructions. This was thought unnecessary, given that a copy of the written instructions would be readily available, and it provided the reporter a brief respite. This case provides a compelling example of why that temptation should have been resisted.

fect of these errors was grounds for reversing his conviction.

¶ 8 In 2004, we reversed King's conviction and held that the trial court abused its discretion by failing to conduct a sufficiently searching inquiry into the potential biases of two empaneled jurors when there were "specific reasons to doubt [their] impartiality." *King I*, 2004 UT App 210, ¶ 27, 95 P.3d 282. Reversing on that basis, we did not reach the question of whether King's counsel was ineffective for permitting the two potentially biased jurors to be empaneled, nor any of the other issues on appeal. *See id.* ¶¶ 25 n. 15, 27 n. 17.

¶ 9 The State petitioned for certiorari, arguing that we erred in granting King a new trial on an issue that was not preserved for appeal. *See King II*, 2006 UT 3, ¶¶ 1, 11, 131 P.3d 202. The Utah Supreme Court granted certiorari and agreed with the State's contention that we erred when we excused King's failure to preserve his objection to the seating of two potentially biased jurors and when we applied an abuse of discretion standard. *See id.* ¶¶ 11, 26. Using a plain error analysis, the Supreme Court held that the trial court did not commit an obvious, harmful error when it seated the potentially biased jurors; reversed our decision; and remanded the case to us with instructions to consider King's ineffective assistance of counsel claim. *See id.* ¶ 26.

¶ 10 On remand, we followed the Supreme Court's directive to consider the ineffective assistance of counsel claim, and we again reversed King's conviction. *See King III*, 2006 UT App 355, ¶ 16, 144 P.3d 222. Applying the test for ineffective assistance of counsel announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we held that King successfully demonstrated that the empaneling of two potentially biased jurors could be traced to the deficient performance of King's counsel. *See King III*, 2006 UT App 355, ¶¶ 5, 9, 144 P.3d 222. Then, we analyzed the second element of the *Strickland* test, i.e., prejudice. *See id.* ¶¶ 10–15. We held that bias of the two ju-

rors in question could be presumed and that King did not, therefore, need to prove actual bias on the part of the jurors. *See id.* ¶ 15. Because the participation of biased jurors presumptively deprives a defendant of a fair trial, we concluded that the presence of the two jurors prejudiced King, and we ordered a new trial, *see id.* ¶ 16.

¶ 11 The State again petitioned for certiorari, asserting that prejudice needed to be actual, not merely presumed, to prove an ineffective assistance of counsel claim. *See King IV*, 2008 UT 54, ¶ 13, 190 P.3d 1283. The Utah Supreme Court again agreed with the State and, accordingly, determined that a rule 23B hearing was the appropriate means to determine whether either of the two jurors was, in fact, actually biased. *See id.* ¶ 47. *See generally* Utah R.App. P. 23B.

¶ 12 On November 3, 2008, the trial court held an evidentiary hearing pursuant to rule 23B, in which the two jurors were questioned by counsel and the court regarding possible bias.[6] On May 6, 2009, the trial court entered findings of fact and conclusions of law, stating that neither juror harbored any actual bias against King as a result of that juror's acquaintance with a sex abuse victim. King's primary arguments on appeal having at last been definitively resolved, on October 19, 2009, the Utah Supreme Court issued an order again remanding the case to us and emphatically instructing us to "address *all* [remaining] appellate issues."

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 13 King argues that the prosecutor's unchallenged remarks during closing argument constitute prosecutorial misconduct requiring reversal. We review a trial court's handling of claimed prosecutorial misconduct for an abuse of discretion. *See State v. Kohl*, 2000 UT 35, ¶ 22, 999 P.2d 7.

■ ¶ 14 King next asserts that the trial court acted improperly by excluding the alleged victim's prior inconsistent statements, while admitting evidence to bolster the alleged victim's credibility. "The issue of

6. Judge Lewis presided over King's trial. Judge Lewis having since retired, the rule 23B hearing was, of necessity, conducted by another judge.

'[w]hether evidence is admissible is a question of law, which we review for correctness[.]'" *Cal Wadsworth Constr. v. City of St. George,* 898 P.2d 1372, 1378 (Utah 1995) (first alteration in original) (citation omitted).

¶ 15 King claims that the trial court erred by failing to make sufficient findings regarding the accuracy of the presentence investigation report. This issue presents "a question of law that we review for correctness." *State v. Veteto,* 2000 UT 62, ¶ 13, 6 P.3d 1133.

¶ 16 King also contends that the absence from the record of a reliable set of jury instructions requires a new trial. We review this issue for an abuse of discretion and grant the trial court deference in determining "whether the record adequately reflects the proceedings." *State v. Menzies,* 845 P.2d 220, 224 (Utah 1992).

¶ 17 Finally, King argues that the cumulative prejudicial effect of prosecutorial misconduct and evidentiary errors at trial requires a new trial. The cumulative error doctrine allows us to consider all errors and "reverse only if the cumulative effect of the several errors undermines our confidence" that King received a fair trial. *State v. Dunn,* 850 P.2d 1201, 1229 (Utah 1993) (citation and internal quotation marks omitted).

## ANALYSIS

¶ 18 Because King's arguments were not preserved below and are raised for the first time on appeal, we will only address the issues if "plain error" or "exceptional circumstances" are established, *see State v. Norton,* 2003 UT App 88, ¶ 10, 67 P.3d 1050 (citation and internal quotation marks omitted). If neither applies, this court will decline to address the issues. *See id.* Because King has not claimed exceptional circumstances, we limit our analysis to the plain error doctrine.

¶ 19 To succeed on a plain error theory with respect to each claimed error, King must demonstrate, that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for [King],

or phrased differently, our confidence in the verdict is undermined." *State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993).

¶ 20 Paralleling his plain error arguments, King claims that the alleged errors are also attributable to the ineffective assistance of his trial counsel, which prejudiced him sufficiently so as to make his trial unfair, thus requiring a new trial. "Because [King] is represented by new counsel on appeal, and because we . . . determine[ ] that the record is adequate to review his claims of ineffective assistance of counsel for the first time on direct appeal, we . . . evaluate those claims as a matter of law." *State v. Chacon,* 962 P.2d 48, 50 (Utah 1998). "To establish ineffective assistance of counsel, [King] must meet the heavy burden of showing that (1) trial counsel rendered deficient performance which fell below an objective standard of reasonable professional judgment, and (2) counsel's deficient performance prejudiced him." *Id.* Stated another way, King "must . . . identify specific acts or omissions that fell outside the wide range of professional assistance and illustrate that, absent those acts or omissions, there is a reasonable probability of a more favorable result." *Id.* (citation and internal quotation marks omitted).

## I. Prosecutorial Misconduct

¶ 21 We review prosecutorial misconduct claims for abuse of discretion and will reverse only if the defendant has shown that

[1] the actions or remarks of . . . counsel call to the attention of the jury a matter it would not be justified in considering in determining its verdict and, if so, [2] under the circumstances of the particular case, whether the error is substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result.

*State v. Kohl,* 2000 UT 35, ¶ 22, 999 P.2d 7 (alterations and omission in original) (citation and internal quotation marks omitted). *See State v. Colwell,* 2000 UT 8, ¶ 39, 994 P.2d 177 ("If determined to be harmful, improper statements will require reversal.").

¶ 22 Under the first prong of the test, a prosecutor's statement during closing

argument that prompts the jury to consider matters outside the evidence constitutes prosecutorial misconduct. *See State v. Troy*, 688 P.2d 483, 486 (Utah 1984). *See also State v. Hopkins*, 782 P.2d 475, 478 (Utah 1989) ("[C]ounsel is precluded from arguing matters not in evidence."). However, the Utah Supreme Court has "repeatedly observed 'that counsel for each side has considerable latitude [in closing arguments] and may fully discuss his or her viewpoint of the evidence and the deductions arising therefrom.'" *State v. Bakalov*, 1999 UT 45, ¶ 56, 979 P.2d 799 (quoting *Dunn*, 850 P.2d at 1223) (alteration in original).

¶ 23 Under the second, or "prejudice," prong of the test, we recognize that "'[a] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone.'" *State v. Todd*, 2007 UT App 349, ¶ 31, 173 P.3d 170 (quoting *United States v. Diaz–Carreon*, 915 F.2d 951, 956 (5th Cir.1990)) (alteration in original), *cert. denied*, 186 P.3d 957 (Utah 2008). "Rather, '[i]mproper prosecutorial comments require reversal only if [they] substantially affected the defendant's right to a fair trial.'" *Id.* (quoting *Diaz–Carreon*, 915 F.2d at 956) (alterations in original). Moreover, "'[f]or an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict.'" *Id.* (quoting *State v. Knight*, 734 P.2d 913, 920 (Utah 1987)) (alteration in original). Indeed, the prejudice prong of the prosecutorial misconduct analysis requires us to consider

> the circumstances of the case as a whole. In making such a consideration, it is appropriate to look at the evidence of defendant's guilt.
>
> If proof of defendant's guilt is strong, the challenged conduct or remark will not be presumed prejudicial. Likewise, in a case with less compelling proof, this Court will more closely scrutinize the conduct. If the conclusion of the jurors is based on their weighing conflicting evidence or evidence susceptible of differing interpretations, there is a greater likelihood that they will be improperly influenced through remarks of counsel.

*Troy*, 688 P.2d at 486 (citation and internal quotation marks omitted). Finally, in addition to considering the evidence of a defendant's guilt, *see id.*, the court should examine (i) "whether defense counsel addressed the improper statements during closing argument and the prosecution then 'restricted his surrebuttal comments to the evidence and made no further mention of' the improper comments," and (ii) "whether the trial court gave a curative instruction admonishing the jury to 'dispassionately consider and weigh the evidence' and instructing them 'not to consider the statements of counsel as evidence.'" *Todd*, 2007 UT App 349, ¶ 34, 173 P.3d 170 (quoting *State v. Dunn*, 850 P.2d 1201, 1225 (Utah 1993)).

¶ 24 Here, King alleges two main instances of prosecutorial misconduct. He claims that misconduct occurred when the prosecutor stated during closing argument—without any evidentiary basis—that the alleged touching occurred for just a "few seconds" while King's daughter rolled over or looked away and that the alleged victim's "What if I lied?" query was merely an expression by a young girl of concern for her reputation, i.e., a concern whether people thought she fabricated her sexual abuse allegation.

¶ 25 While it is true that an attorney may posit interpretations of, and inferences arising from, the evidence, *see Dunn*, 850 P.2d at 1223 (stating that counsel may express his view of the evidence and the deductions arising therefrom), here the prosecutor went much further in "spinning" the evidence to suit his purposes. There was no basis in the evidence for characterizing what the alleged victim *really* meant when she said "What if I lied?" as "What people would think ... if they thought [I] was a liar." And his characterization of the abuse as lasting for mere seconds contradicted the testimony that the abuse occurred for a period of two to three minutes. Simply stated, the prosecutor improperly urged the jury to consider "matters not in evidence." *Hopkins*, 782 P.2d at 478. This satisfies the first prong of the test for prosecutorial misconduct. *See Kohl*, 2000 UT 35, ¶ 22, 999 P.2d 7 (prohibiting counsel

from calling the jury's attention to matters it may not consider).

¶ 26 It is a somewhat closer call as to whether the prosecutor's two statements were so prejudicial as "to undermine [our] confidence in the verdict" or "substantially affect[ King]'s right to a fair trial." *Todd*, 2007 UT App 349, ¶ 31, 173 P.3d 170. When considering "the circumstances of the case as a whole," *Troy*, 688 P.2d at 486, we note that the evidence by which King was convicted at trial was scant, based almost exclusively on the testimony of the alleged victim and accounts of her statements as testified to by others. "[I]n a case [like this] with [little] compelling proof, this [c]ourt will more closely scrutinize the [prosecutor's] conduct." *Id.* Here, given the minimal evidence against King, the failure of defense counsel to address the prosecutor's remarks during defense's closing argument, and the absence of any curative instruction from the trial court, we might well conclude that the prosecutor's misstatements were prejudicial, thus justifying reversal. However, we do not make that determination directly, because King failed to preserve these arguments below and now alleges prosecutorial misconduct for the first time on appeal. We must therefore run the prosecutorial misconduct claims through a secondary level of analysis under the doctrines of plain error and ineffective assistance of counsel.

## A. Plain Error

¶ 27 King's "failure to object to improper remarks" waives his prosecutorial misconduct claim unless the remarks reach the level of plain error, *State v. Emmett*, 839 P.2d 781, 785 (Utah 1992), meaning that "an error exists [that] should have been obvious to the trial court" and that "the error was harmful," *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). *See State v. Colwell*, 2000 UT 8, ¶ 39, 994 P.2d 177 ("To obtain a reversal, the defendant must show that the prosecutor's remarks were obviously improper and harmful.").

¶ 28 In this case, it is not clear that the error would have been obvious to the trial court. However, even assuming arguendo that the error should have been obvi-

ous to the trial court, *cf. State v. Eldredge*, 773 P.2d 29, 35 n. 8 (Utah) (noting "that the obviousness requirement poses no rigid and insurmountable barrier to review" and stating that even if the misstatements are not "obvious," the court may "dispense with the requirement of obviousness so that justice can be done"), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989), an error is harmful only if it undermines our confidence in the verdict or, put another way, if "there is a reasonable likelihood of a more favorable outcome for the appellant" without the error, *Dunn*, 850 P.2d at 1208–09. Plain error will not be found, however, "if a party through counsel has made a conscious decision to refrain from objecting." *State v. Bullock*, 791 P.2d 155, 158 (Utah 1989), *cert. denied*, 497 U.S. 1024, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990).

¶ 29 We do not conclude that either the prosecution's "few seconds" statement or its characterization of "What if I lied?," taken alone, are so harmful as to undermine our confidence in the verdict. We are unconvinced that the absence of one of the statements alone, or even of both, would give rise to a reasonable likelihood of a more favorable outcome for King. That said, we carry our considerable concern about the prosecutorial misconduct forward, for consideration under the cumulative error doctrine. This approach is not novel. Courts often decline to individually analyze the harmfulness of each error committed at trial, relying instead on an analysis of the cumulative harm caused by the errors collectively. *See, e.g., State v. Palmer*, 860 P.2d 339, 349–50 (Utah Ct.App.), *cert. denied*, 868 P.2d 95 (Utah 1993).

## B. Ineffective Assistance of Counsel

¶ 30 When analyzing a claim of ineffective assistance of counsel, we must make two distinct determinations: "(1) whether counsel's performance was deficient in that it 'fell below an objective standard of reasonableness'; and (2) whether counsel's performance was prejudicial in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Menzies v. Galetka*, 2006 UT 81, ¶ 87, 150

P.3d 480 (quoting *Strickland v. Washington*, 466 U.S. 668, 688–89, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Failure to establish either prong is fatal to a defendant's ineffective assistance claim. *See State v. Diaz*, 2002 UT App 288, ¶ 38, 55 P.3d 1131, *cert. denied*, 63 P.3d 104 (Utah 2003).

■■■■■ ¶ 31 In order to determine whether a defendant has met his substantial burden, we "must 'eliminate the distorting effects of hindsight ... and ... evaluate the conduct [complained of] from counsel's perspective at the time [it occurred].'" *Galetka*, 2006 UT 81, ¶ 89, 150 P.3d 480 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052) (omissions in original). Thus, so long as "a rational basis for counsel's performance can be articulated, we will assume counsel acted competently." *State v. Tennyson*, 850 P.2d 461, 468 (Utah Ct.App.1993). Stated differently, "before we will reverse a conviction based on ineffective assistance of counsel, we must be persuaded that there was a lack of any conceivable tactical basis for counsel's actions." *State v. Bryant*, 965 P.2d 539, 542 (Utah Ct.App.1998) (citation and internal quotation marks omitted). We also note that "[n]either speculative claims nor counsel's failure to make futile objections establishes ineffective assistance of counsel." *State v. Chacon*, 962 P.2d 48, 51 (Utah 1998).

¶ 32 Here, King claims his trial counsel was ineffective because counsel inadequately questioned the alleged victim regarding what she meant when she asked her sister, "What if I lied?"; did not object to the prosecutor's recharacterization of the "What if I lied?" statement; and failed to object to or correct—and, in fact, affirmatively embraced—the prosecutor's mischaracterization of the record when he stated that the alleged touching occurred for only a "few seconds."[7] Moreover, defense counsel agreed that the encounter "was probably fairly quick," arguably conceding that the sexual touching actually occurred.

¶ 33 At trial, defense counsel was not required to object to or address the prosecution's improper remarks if such objections would have been futile, *see id.*, or if there was a sound tactical basis for not doing so, *see Bryant*, 965 P.2d at 542. Here, however, such objections would not have been futile because the prosecutor's statements clearly referred to matters not in evidence. And although it is conceivable that defense counsel did not object during the State's closing argument because he instead preferred to address the issue in his own closing argument, defense counsel failed to mention the prosecution's mischaracterizations *at all* during closing. Moreover, there is no conceivable basis for conceding the accuracy of the prosecution's "few seconds" comment, given that there was no evidentiary support for the statement, much less for conceding that an improper touching indeed occurred. Thus, we readily conclude that, in failing to object to or correct the prosecutor's improper remarks, King's trial counsel's performance was deficient because it fell below an objective standard of reasonableness.[8]

¶ 34 Nevertheless, to satisfy the second prong of the test for ineffective assistance of counsel, King must show that defense counsel's performance was prejudicial, meaning that without counsel's errors the result would

---

7. This decision by defense counsel is particularly troubling. The credibility of the alleged victim's account was necessarily undermined by her claim that her friend was distracted while rubbing the alleged victim's hair with a pillow for two to three minutes while King inappropriately touched her. It is downright implausible that two such activities could go on for so long in that setting. It becomes perfectly believable if the period of time is only seconds and not minutes. It is bad enough that defense counsel did not challenge the prosecutor's mischaracterization of the evidence as being in terms of seconds, not minutes. It is bizarre, and clearly without any sound tactical purpose, that defense counsel actually endorsed the mischaracterization.

8. We are hesitant to conclude that defense counsel's performance was inadequate with regard to probing the alleged victim for an explanation of the "What if I lied?" comment. While the comment surely seems to suggest the possibility of fabrication, it is reasonable to believe that King's counsel made a tactical decision not to question the alleged victim about the statement in an attempt to avoid the appearance of harassing the alleged victim or out of concern that she might characterize the remark as pertaining to something else altogether. Indeed, not probing for an explanation at trial may well have been pursuant to the old adage that a lawyer should never ask a trial witness a question to which he or she does not already know the answer.

have been more favorable to King. *See Galetka,* 2006 UT 81, ¶ 87, 150 P.3d 480. Given the nature of the case, we are not prepared to say that the result at trial would have been more favorable to King if only his trial counsel would have objected to the prosecution's misstatements during closing argument. However, as with our approach to the "plain error" misconduct dealt with in subsection IA, we further consider the question of prejudice in the context of cumulative error.

### C. Cumulative Error

¶ 35 "Under the cumulative error doctrine, we will reverse only if 'the cumulative effect of the several errors undermines our confidence ... that a fair trial was had.'" *State v. Dunn,* 850 P.2d 1201, 1229 (Utah 1993) (omission in original) (citation omitted). *See State v. Cardall,* 1999 UT 51, ¶ 26, 982 P.2d 79 ("Cumulative error occurs where a defendant's right to a fair trial is prejudiced by a number of errors."). In assessing a cumulative error claim, "we consider all the identified errors." *Dunn,* 850 P.2d at 1229. *Cf. State v. Killpack,* 2008 UT 49, ¶ 56, 191 P.3d 17 ("If, however, we determine that a defendant's claims do not constitute errors on the part of the trial court, then it follows that the requirements of the cumulative error doctrine are not met."). While we more readily find errors to be harmless when confronted with overwhelming evidence of the defendant's guilt, *see, e.g., State v. Bishop,* 753 P.2d 439, 499–500 (Utah 1988) (Zimmerman, J., concurring in the result), we are more willing to reverse when a conviction is based on comparatively thin evidence, *see, e.g., State v. Havatone,* 2008 UT App 133, ¶ 17, 183 P.3d 257.

¶ 36 In this case, the prosecutor made two statements during closing argument that were mischaracterizations of the evidence in the record. First, he indicated that when the alleged victim said, "What if I lied?," she was merely expressing concern for her reputation, wondering if people would think she had been untruthful. There was no evidence in the record to support such an explanation. The prosecutor had the opportunity to elicit such an explanation from the alleged victim and did not do so. Presumably, he would have done so if he knew this characterization to be true. Furthermore, defense counsel failed to object to the prosecutor's mischaracterization.

¶ 37 Second, the prosecutor recounted the circumstances of the alleged abuse, telling the jury that King fondled the alleged victim for just a "few seconds" and that perhaps King's daughter, who might have otherwise seen the abuse, rolled over or looked away during this momentary contact.[9] Again, there was no evidence in the record to support this explanation, and indeed, it was contrary to the evidence that the abuse lasted for two to three minutes during which time King's daughter was focused on rubbing a pillow on the alleged victim's head. Perplexingly, defense counsel embraced the prosecution's view, stating that the abuse "was probably fairly quick," thus conceding, at a minimum, the accuracy of the prosecutor's recharacterization of the evidence and, arguably, his client's guilt. In sum, there was no evidence to support the two misstatements; rather, the prosecutor sought "to plant [a] seed" as to the possibility of such occurrences in the jurors' minds.

¶ 38 When the prosecution's two misstatements, coupled with defense counsel's and the court's failures to correct the misstatements, and defense counsel's affirmative acceptance of one of the misstatements, are viewed cumulatively, and given the fact that the prosecution relied almost exclusively on the testimony of the alleged victim and witnesses' accounts of what she reported, our confidence that a fair trial was had is, indeed,

---

9. It may well be that the prosecutor was on to something here. Given the circumstances, it is much easier to believe that the alleged abuse, if it happened at all, did not go on for several minutes. However, it does not follow that the prosecutor was free to argue facts not in evidence. Rather, he could have explored with the alleged victim during her testimony the temporal duration of the abuse—for example, using a stopwatch, he could have started the timer and had the alleged victim tell him to stop the timer so as to indicate how long the abuse lasted, thus showing the jury other than by verbal description how long the abuse lasted—or otherwise laid some foundation for the argument he hoped to make.

significantly shaken. *See Dunn*, 850 P.2d at 1229. "While any one of the[ ] errors, considered individually, may or may not have been prejudicial to [King], when taking them together, we cannot say that a fair trial was had, especially considering that the State's case against [King] was not particularly strong." *Havatone*, 2008 UT App 133, ¶ 8, 183 P.3d 257. Therefore, "[w]e reverse [King]'s conviction based on the cumulative error doctrine. Several errors below, although possibly not individually prejudicial, when combined and considered with the weakness of the evidence against [King], undermine our confidence that [King] received a fair trial." *Id.* ¶ 17. *See State v. Iorg*, 801 P.2d 938, 941–42 (Utah Ct.App.1990).

¶ 39 We observe that with reversal on this basis, we ordinarily would not reach the other issues on appeal, for the reason there would be no need to do so, and thus, any discussion of the other issues would only be dicta. However, given the Supreme Court's clear directive that we "address *all* appellate issues that were properly preserved and properly raised on appeal," [10] we have no choice but to do so.

## II. Admissibility of Evidence

 ¶ 40 "An erroneous decision to admit or exclude evidence does not constitute reversible error unless the error is harmful." *Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1378 (Utah 1995). "An error is harmful if it is reasonably likely that the error affected the outcome of the proceedings." *Id.* at 1378–79. "In other words, [f]or an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." *Id.* at 1379 (alteration in original) (citation and internal quotation marks omitted).

### A. Alleged Victim's Statements to King's Daughter [11]

 ¶ 41 At trial, King sought to introduce evidence that the alleged victim made inconsistent statements to King's daughter. In particular, King's daughter answered affirmatively when asked whether the alleged victim "ha[d] told [her] a couple different things regarding what she claims ... King did." [12] Despite King's assertions at trial that such statements were admissible hearsay offered to show the alleged victim's intent, the trial court nevertheless excluded the statements as inadmissible hearsay. At no time did defense counsel make an offer of proof as to what King's daughter would say, specifically, if permitted to testify.

¶ 42 King now argues that the trial court plainly erred by excluding part of King's daughter's testimony because her remarks were not offered to prove the truth of what the alleged victim said but instead were offered to show that the alleged victim made inconsistent statements about the incident, thus demonstrating her lack of credibility. We decline to consider this argument. At trial, King initially argued that his daughter's statements were hearsay but were nevertheless admissible because they went "to the intent behind the alleged victim." Having not argued at trial that the testimony was admissible because it was not hearsay, King cannot raise that claim for the first time on appeal. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 ("As a general rule, claims not raised before the trial court may not be raised on appeal.").

¶ 43 To the extent King relies on the plain error doctrine to raise this claim for the first time on appeal, we cannot conclude that the trial court committed error, plain or otherwise, by excluding King's daughter's state-

10. We have not added the emphasis. It appears in the Supreme Court's order, reinforcing the strength of the Court's admonition.

11. As an alternative to his plain error arguments regarding the admissibility of evidence, King claims that his trial counsel was ineffective. Because we determine no errors existed, we do not separately analyze King's ineffective assistance of counsel claims insofar as they are focused on the exclusion of his daughter's offered testimony concerning the statements made to her by the alleged victim and on the admission of evidence that King claims bolstered the alleged victim's credibility.

12. It is not clear from the record whether the word "different," as it was used here, meant inconsistent or "unlike," or merely "distinct or separate," *see* Webster's Third New International Dictionary 630 (1993).

ments, given King's failure to offer proof of what his daughter would have said. That lack of an adequate record prevents us from undertaking any meaningful analysis regarding the prejudice of any such error, and prejudice is a requirement of the plain error doctrine, *see State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993).

### B. Improper Bolstering of the Alleged Victim's Credibility

¶ 44 King argues that the State used the testimony of a police detective, a social worker, and the alleged victim's grandmother to improperly bolster the alleged victim's credibility. Rule 608(a) of the Utah Rules of Evidence provides, in relevant part, as follows:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: ... the evidence may refer only to character for truthfulness or untruthfulness....

Utah R. Evid. 608(a). The rule, therefore, "permits testimony concerning a witness's general character or reputation for truthfulness or untruthfulness but prohibits any testimony as to a witness's truthfulness on a particular occasion." *State v. Rimmasch,* 775 P.2d 388, 391 (Utah 1989). In other words, a witness may "not offer a direct opinion" of another witness's truthfulness on a particular occasion. *State v. Adams,* 2000 UT 42, ¶ 13, 5 P.3d 642. *See State v. Stefaniak,* 900 P.2d 1094, 1095 n. 2 (Utah Ct.App. 1995) (indicating that rule 608(a) applies to lay witnesses as well as expert witnesses). And even if testimony improperly bolsters the alleged victim's credibility, admission of that testimony will not result in reversal unless it was prejudicial to King. *See Stefaniak,* 900 P.2d at 1096. *Cf. State v. Iorg,* 801 P.2d 938, 941 (Utah Ct.App.1990) ("If there is a reasonable likelihood that, absent the error, there would have been a more favorable result for the defendant, then his conviction must be reversed.").

¶ 45 In this case, both the police detective and the social worker answered questions that revealed the number of cases of sexual abuse or child neglect on which each had worked. Both witnesses indicated that they had dealt with cases in which allegations of abuse had been substantiated and cases in which such allegations had not been substantiated. Contrary to King's assertions, however, neither the detective nor the social worker spoke in terms of probabilities, nor did they offer "direct opinion[s]" on the truthfulness of the alleged victim's assertion that King fondled her, *see Adams,* 2000 UT 42, ¶ 13, 5 P.3d 642. Rather, the two witnesses' testimony was the product of the State's attempt to establish that the witnesses were each qualified professionals in their respective fields and were not zealots, inclined to pursue all claims that came before them. These witnesses are not like the witness in *Stefaniak,* who offered an opinion about the alleged victim's truthfulness based on the witness's belief regarding the validity of statements made by members of a particular group, specifically sex abuse victims. *See* 900 P.2d at 1095. *Cf. State v. Rammel,* 721 P.2d 498, 500 (Utah 1986) (determining it was harmless error to allow a police detective to provide expert testimony "that because most suspects lie when initially questioned by police, it would not have been 'unusual' for [the defendant] to lie during the first police investigation").

¶ 46 Additionally, the alleged victim's grandmother answered a question in such a way as to indicate that there was nothing to make her think that her granddaughter, in making the allegations, was not telling the truth. In other words, the grandmother was essentially asked if she believed her granddaughter. Even assuming arguendo that the grandmother's testimony improperly bolstered the alleged victim's credibility, we conclude that any such error was harmless. When Utah appellate courts reverse for improper bolstering, they usually do so not only where a case hinges on an alleged victim's credibility and there is no physical evidence, *see Stefaniak,* 900 P.2d at 1095–96, but also where the bolstering was done by an expert witness. *See, e.g., Rimmasch,* 775 P.2d at 407–08; *Iorg,* 801 P.2d at 939, 941–42. *See also State v. Jacques,* 924 P.2d 898, 903 n. 4 (Utah Ct.App.1996) (observing "that appellate courts are especially reluctant to find

errors harmless when they concern opinions given by experts, given the perception that jurors tend to give great weight to such testimony") (citation omitted). Here, the alleged victim's grandmother was not an expert nor did she testify as such. The grandmother was the first person to report the abuse to a school counselor, and as a close family member who had made such a report, it would come as no real surprise to the jury that she believed her granddaughter. Obviously, had she disbelieved her granddaughter, she presumably would not have made the report. Because her testimony added nothing to the alleged victim's credibility, any incidental bolstering by the grandmother was harmless.

## C. Admission of Preliminary Hearing Transcript

¶ 47 After being informed that defense counsel planned to explore the inconsistencies between the alleged victim's trial testimony and her preliminary hearing testimony, the trial court offered to have the preliminary hearing transcript admitted into evidence rather than have it be read to the jury. Defense counsel agreed with this approach. Indeed, each juror received a personal copy of the preliminary hearing transcript. King now claims that the admission of the preliminary hearing transcript as an exhibit constitutes reversible error under the plain error doctrine. King also argues that his trial counsel rendered ineffective assistance by opting to have the transcript itself given to the jury.

¶ 48 To establish plain error, King must demonstrate the existence of an obvious error that was prejudicial. *See State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). To prevail on his ineffective assistance claim, King must show that his counsel's performance was both deficient and prejudicial to his case. *See State v. Chacon*, 962 P.2d 48, 50 (Utah 1998).

¶ 49 To prove that counsel's performance was deficient, King must overcome the "strong presumption that counsel's performance fell within the wide range of reasonable professional assistance and that under the circumstances, the challenged action might be considered sound trial strategy."

*State v. Cosey*, 873 P.2d 1177, 1179 (Utah Ct.App.1994) (citation and internal quotation marks omitted). In Utah, right-of-confrontation concerns are generally satisfied if the defendant has the opportunity to cross-examine the witness in court. *See State v. Vargas*, 2001 UT 5, ¶ 28 n. 7, 20 P.3d 271. Moreover, attorneys may opt to forego cross-examination of witnesses for valid strategic reasons. *See, e.g., State v. Strain*, 885 P.2d 810, 815–18 (Utah Ct.App.1994). Here, King actually cross-examined the alleged victim, both at trial and at the preliminary hearing. Furthermore, the court suggested submitting the transcript to the jury and defense counsel then made a conscious decision to do so.

¶ 50 Further review of the record persuades us that defense counsel's decision to introduce the transcript into evidence, rather than read it into the record or refer to it while cross-examining the alleged victim, was reasonable. First, defense counsel used the preliminary hearing transcript during closing argument to read the alleged victim's statements and emphasize her inconsistencies one by one to the jurors. This may well have been a sound tactical decision, as it permitted defense counsel to highlight the alleged inconsistencies without affording the alleged victim an opportunity to explain them away. Further, defense counsel may have wanted to avoid the appearance of badgering a sympathetic witness. *See id.* at 816 (determining that defense counsel's limited cross-examination of murder victim's mother could be a reasonable strategic choice to avoid the appearance of making personal attacks upon the victim or her mother).

¶ 51 Moreover, the mere fact that some attorneys might have preferred to cross-examine the alleged victim in lieu of submitting the transcript into evidence does not render this assistance ineffective. *Cf. Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("Even the best criminal defense attorneys would not defend a particular client in the same way."). Thus, we "will not review counsel's tactical decisions simply because another lawyer, e.g., appellate counsel, would have taken a different course." *State v. Jones*, 823 P.2d 1059, 1063 (Utah 1991). Where, as here,

defense counsel's chosen strategy "falls within the wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, King's ineffectiveness claim must fail.[13] Nor can we say that the court committed plain error in offering counsel the choice it did, or accepting the option that was selected.[14]

### III. Inaccuracies in Presentence Investigation Report

¶ 52 Under Utah law, the trial court must "resolve on the record any claimed inaccuracies in the [presentence investigation] report." *State v. Veteto,* 2000 UT 62, ¶ 13, 6 P.3d 1133. Utah Code section 77–18–1(6)(a) provides:

> Any alleged inaccuracies in the presentence investigation report, which have not been resolved . . . prior to sentencing, shall be brought to the attention of the sentencing judge, and the judge may grant an additional ten working days to resolve the alleged inaccuracies of the report. . . . If after ten working days the inaccuracies cannot be resolved, the court shall make a determination of relevance and accuracy on the record.

Utah Code Ann. § 77–18–1(6)(a) (Supp.2010). Moreover, "[i]f a party fails to challenge the accuracy of the presentence investigation report at the time of sentencing, that matter shall be considered to be waived." *Id.* § 77–18–1(6)(b).

¶ 53 King argues for the first time on appeal that the presentence investigation report (PSI) was inaccurate. King claims that trial courts are required "to make findings when factual disputes are present in [PSIs]." But here, there is no evidence that a factual dispute existed because defense counsel failed to challenge the PSI's accuracy. *Cf. Veteto,* 2000 UT 62, ¶ 13, 6 P.3d 1133 (remanding for sentencing judge to make findings to resolve the defendant's objection to alleged inaccuracies in a PSI). Therefore, the issue was waived.[15] *See* Utah Code Ann. § 77–18–1(6)(b).

### IV. Jury Instructions

¶ 54 King argues that the trial court's reconstruction of the jury instructions was inadequate and requires reversal. He does not challenge any of the instructions actually reconstructed by the court but, rather, objects to the court's failure to include the instructions in the record initially, the court's "speculative" reconstruction process, and the uncertainty as to which of the thirty-four

---

13. King makes much about his constitutional right to confrontation. His claim, however, is wholly without merit. The cases cited by King, *State v. Carter,* 888 P.2d 629 (Utah 1995) and *State v. Solomon,* 96 Utah 500, 87 P.2d 807 (1939), support the proposition that transcripts of a witness's testimony at a prior hearing may not be admitted into evidence against the objection of a defendant but do not state that defense counsel is prohibited from making a strategic decision to introduce them. *See Carter,* 888 P.2d at 642; *Solomon,* 87 P.2d at 810–11. Moreover, a defendant may waive his constitutional right of confrontation by electing to forgo cross-examination of a witness. *See Bullock v. Carver,* 297 F.3d 1036, 1057 (10th Cir.), *cert. denied,* 537 U.S. 1093, 123 S.Ct. 703, 154 L.Ed.2d 640 (2002). Thus, even if the submission of the transcript to the jury was erroneous, because it was submitted at defense counsel's request, "[i]n the absence of a proper and seasonable objection, an error such as this will be deemed waived." *State v. Davis,* 689 P.2d 5, 15 (Utah 1984). Here, King's defense counsel chose to introduce the preliminary hearing transcript into evidence. Furthermore, prior to introducing the transcript into evidence, defense counsel *actually confronted* the alleged victim. Indeed, defense counsel questioned the alleged victim at length at trial and conducted a meaningful cross-examination at the preliminary hearing as well. Thereafter, defense counsel decided against further cross-examination of the alleged victim and instead chose to submit the transcript into evidence.

14. We note, in addition, that both theories advanced by King require that he establish prejudice. *See State v. Chacon,* 962 P.2d 48, 50 (Utah 1998); *State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993). Even if we had seen an obvious error or deficiency in defense counsel's actions, which we do not, we would be hard-pressed to conclude that one of two offered methods for getting the prior testimony before the jury would have resulted in a more favorable outcome for King. *See generally Dunn,* 850 P.2d at 1208–09.

15. King suggests in passing that we should address this issue under the doctrines of plain error or ineffective assistance of counsel. Although we are unpersuaded that our ruling on this issue would differ under either suggested analysis, because both arguments are inadequately briefed, *see generally* Utah R.App. P. 24(a)(9), we decline to address them further.

proposed instructions were actually given. "[A] new trial will not be granted unless it is shown that the transcription errors prejudiced [King's] appeal." *State v. Menzies*, 845 P.2d 220, 228 (Utah 1992). Because we are not persuaded that any prejudice resulted, King's claim fails.

¶ 55 At the reconstruction hearing, the court, along with counsel for both parties, utilized the record to determine the thirty-four instructions that were proposed in this case. The proposed instructions were supplied by the State and the court. Defense counsel did not contend that other instructions had been proposed or provide any additional proposed instructions. Following the hearing, the trial court compiled a set of twenty-six reconstructed instructions, which it determined "with reasonable certainty to be the actual set of instructions given to the jury at [King]'s trial."

¶ 56 The trial court's reading of the jury instructions should have been transcribed by the court reporter in this case. *See Briggs v. Holcomb*, 740 P.2d 281, 282–83 (Utah Ct.App.1987) ("[D]istrict courts are courts of record ... [and] it is impossible for an appellate court to review what may ultimately prove to be important proceedings when no record of them has been made."). However, not every instance of a missing portion of the record necessitates reversal. The trial court has the authority to reconstruct the record. *See* Utah R.App. P. 11(g). Here, the approach used by the trial court was sound: The court started with a reasonably reliable set of proposed instructions. As the judge who had presided over the trial, she employed her memory and, no doubt, her sense of what would have been her typical practice when presented with such instructions. Reviewing the "non-stock" instructions one by one, she developed a set of the instructions that she was "reasonabl[y] certain[ ]" she had given at trial. Defense counsel made no specific claim during the reconstruction process that any particular instruction in the reconstructed set had not been given or that the set lacked any particular instruction.

¶ 57 Contrary to King's claim that the reconstruction efforts were "speculative," the court knew the source of and had access to the original proposed instructions, reviewed its dialogue with counsel recorded in the trial transcript to determine which proposed instructions were likely found to be superfluous, and went through the non-stock proposed instructions one by one with counsel. Because the trial court had the authority to reconstruct the jury instructions and did so in a reliable way, and because King has not challenged the content of any of the reconstructed jury instructions on appeal, King's claim fails.

CONCLUSION

¶ 58 The prosecutor's statements mischaracterizing the evidence at trial may have been sufficiently prejudicial to undermine our confidence in the verdict. But coupled with defense counsel's failure to object to or clarify, and his implicit acceptance of, such comments, which constituted ineffective assistance of counsel, the cumulative effect of the errors is palpable. In particular, these several errors, when viewed in light of the relatively thin evidence against King, significantly undermine our sense that King received a fair trial. Accordingly, we reverse King's conviction under the cumulative error doctrine and remand for a new trial or such other proceedings as may now be appropriate.

¶ 59 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge and JUDITH M. BILLINGS, Senior Judge.